[No. 22911. Department Two. May 4, 1931.]

SEVENTH ELECT CHURCH IN ISRAEL, *Plaintiff*, v. FIRST SEATTLE DEXTER HORTON NATIONAL BANK *et al.*, *Respondents*, ARNELL R. SULT *et al.*, *Defendants*, STELLA ROUKE *et al.*, *Appellants.*[1]

*Alexander H. McKinnon* and *Christopher Jacobsen*, for appellants.

*Poe, Falknor, Falknor & Emory*, for respondents.

BEELER, J.—Daniel Salwt died intestate June 11, 1929, at which time there was on deposit in his name,

[1]Reported in 299 Pac. 359.

in two banks at Seattle, money in excess of $100,000. In addition thereto, several parcels of real estate situated within the State of Washington stood in his name. Salwt (also known as Sult) left surviving him, as his sole heirs, the defendants Arnell R. Sult and Clayton A. Sult. The Dexter Horton National Bank of Seattle, now the First Seattle Dexter Horton National Bank, was appointed and qualified as administrator of the estate of Daniel Salwt, deceased, and filed an inventory as required by law. Claims were filed by the appellants with the administrator, which the administrator rejected.

Thereafter, on February 4, 1930, the plaintiff church instituted this action, and, in its complaint, in addition to the foregoing facts, alleged: That Salwt had received the real estate and the money on deposit in the two Seattle banks for the use and benefit of the church and of its members, and that all of the property and money was held by the deceased in trust for the plaintiff church; and further alleged that the claims of the appellants were spurious and false; that they were not verified, served or filed as required by law; that the deceased, Daniel Salwt, was not indebted to the appellants or either of them, nor was the property held in trust by the said Daniel Salwt for the appellants or either of them, and the church undertook to impress a trust on these funds in its favor.

The appellants, in their answer, denied all the material allegations of the complaint of the plaintiff church, and by way of cross-complaint prayed that these same funds be impressed with a trust in their favor. The cross-complaint contains six affirmative causes of action, wherein each one of the several appellants sets forth his respective claim to the funds under the control of the respondent.

The plaintiff church interposed a demurrer to ap-

pellants' cross-complaint, which was sustained by the court on three grounds: First, that several causes of action were improperly united in the cross-complaint; second, that the causes of action set forth in the cross-complaint are independent of and unrelated to the subject matter of the plaintiff's alleged cause of action; and third, that the cross-complaint failed to state facts sufficient to constitute a cause of action against the administrator. The appellants declined to plead further, and elected to stand upon their cross-complaint. This appeal followed.

The question, then, is whether the facts pleaded in the cross-complaint are sufficient to entitle the appellants to the relief they seek.

It is alleged in the cross-complaint that Daniel Salwt, the self-appointed "Messenger of God," claiming divine power over mortal bodies and souls, organized a religious sect, cult, or brotherhood, one of the requirements promulgated by the "Messenger" being, that all members must turn over to him all their property and wages, and receive in return from the common fund food, lodging, and necessary raiment, and the assurance of an entry into Heaven without going through the agony of death. The appellants became members, and turned over to Salwt funds and wages in various amounts, and now seek the return of the same from the administrator on the theory of a constructive trust.

In passing upon this question, it is essential to bear in mind the relation which existed between the appellants and Salwt as their teacher, head, and inspired leader, and the boundless confidence which they reposed in him. It is not necessary to determine whether Salwt was simply an enthusiast, a fanatic, or whether he was a shrewd schemer, using religion and the credulity of his disciples to further his own material ends.

Where, for any reason, the legal title to property is placed in one person under such circumstances as to make it inequitable for him to enjoy the beneficial interest, a trust will be implied in favor of the persons entitled thereto. This arises by construction of equity, independently of the intention of the parties. Equity will raise a constructive trust and compel restoration, where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means, gains something for himself which, in equity and good conscience, he should not be permitted to hold. 26 R. C. L. 1236, 1237, 35 A. L. R. 307; *Rozell v. Vansyckle,* 11 Wash. 79, 39 Pac. 270; *Pollard v. McKenney,* 69 Neb. 742, 96 N. W. 679, 101 N. W. 9; *Quinn v. Phipps,* 93 Fla. 805, 113 South. 419, 54 A. L. R. 1173; *Scott v. Thompson,* 21 Iowa 599.

The facts in the case of *Scott v. Thompson, supra,* are strikingly similar to the facts in the instant case. In that case, one Thompson founded a society or organization called "Jehovah Presbytery of Zion." He held out to his followers that the special revelations required certain things of them, among which were to turn over to him all of their property for the purpose of enriching the treasury of the Lord, and to labor under his directions for two years, without remuneration other than board, clothing, religious instruction, and spiritual exultation. The court held that Thompson held the property and funds in trust for his deluded and confiding followers, and that they were entitled to recover all they had contributed to the common fund.

"The record in this case exhibits a transaction almost as marvelous as the pretended revelation of Thompson would have been if true. The meager statement above gives but a faint idea of the uncontrolled and absolute subjection of the members in 'body, mind and estate,' to him whom for a time they sincerely re-

garded and obeyed as the 'chief steward of the Lord, and the first-born of the kingdom in these last days.' His wish was their law. The obedience rendered was cheerful, confiding and unquestioning. He was their guide, temporal and spiritual. By a series of exactions, beginning with a mild gift oblation, and ending with the severe sacrifice of all things (including the shirts upon their backs) he succeeded at length in getting into his name literally *all* the worldly possessions of the society. . . .

"From the nature of the society, from the manner in which the property was acquired, from settlements made with those who left the society, from written and spoken declarations of Thompson, and his assurances and pledges to the members, it is clear, beyond any doubt whatever, that he held the property in trust."

In the present case, the issues presented by the complaint of the plaintiff church were equitable. The relief prayed for in the several affirmative causes of action of the cross-complaint of the appellants were equitable. The several causes of action in the cross-complaint are not independent, but are all related to the same subject-matter—whether Daniel Salwt, deceased, held the money and real estate in trust, and, if so, for whom.

In the case of *Huxtable v. Berg*, 98 Wash. 616, 168 Pac. 187, the court had under consideration the matter of bringing parties before the court all in one equitable action. There the plaintiffs, as stockholders in a corporation, brought an action to restrain the sale under execution of an irrigation canal and its connected structures. The defendants named in the complaint were a judgment creditor named Berg, and the sheriff of Yakima county. Berg responded by answer and cross-complaint. In the cross-complaint, the Yakima Valley Canal Company, a corporation, its trustees, and one Congdon who was trustee in a deed or mortgage made by the canal company for the purpose

of securing its bonds, were made parties defendant. In his cross-complaint, Berg sought to compel the trustees of the corporation to levy an assessment to pay his judgment, and restrain Congdon from foreclosing his trust deed or mortgage, claiming that the trustees had entered into a conspiracy with the other stockholders to foreclose the mortgage, and thereby defeat his judgment. Plaintiffs in the original action, and the adverse parties named in the cross-complaint, moved to strike the cross-complaint on the theory that it was not germane to the original action. This motion was denied, and on appeal was assigned as error. Passing on the question, we said:

"The first question is whether the trial court erred in denying the motion to strike the cross-complaint. . . . Section 196, Rem. Code, provides that, when a complete determination of a controversy cannot be had without the presence of other parties, 'the court shall cause them to be brought in.' Section 406, Rem. Code, provides that judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; 'and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves.' In *Maher & Co. v. Farnandis*, 70 Wash. 250, 126 Pac. 542, the plaintiff, a second subcontractor, brought an action to foreclose a lien. The defendants in the action were the original contractor and the first subcontractor. The first subcontractor answered the complaint and filed a cross-complaint against the principal contractor, claiming that the latter was indebted to him for a balance due. The principal contractor moved to strike the cross-complaint because it was improper in such an action, and because he was entitled to try the issues presented thereby to a jury. This motion was denied, and the trial to the court resulted, on the cross-complaint, in a judgment in favor of Carter, the first subcontractor, and against the principal contractor. Upon appeal two principal contentions were made against the Carter judgment:

(a) That the court erred in not striking the cross-complaint; and (b) that, if the issues raised thereby were triable in that action, it was an issue of law and he was entitled to a jury trial. Upon the question it was there said:

" 'We think the better view is that, where the original bill presents questions of equitable cognizance, the defendant may have legal relief against the plaintiff, and that the several defendants may cross-plead with each other and have all rights between them germane to the subject of the bill determined. (Citing authorities.) This rule avoids a multiplicity of suits, is in aid of orderly procedure, and is in harmony with the statute. The Code, Rem. & Bal., § 406, provides that, when "the justice of the case requires it," the court may determine "the ultimate rights of the parties on each side as between themselves." '

"In that case, it will be observed that the issue raised by the cross-complaint was one of law, while the original action was an equitable one. It was, nevertheless, held that the issue of law between the defendants could be presented by the cross-complaint and tried in the original action. In the case now before us, the issue presented by the original complaint was equitable. The relief asked for by the cross-complaint was equitable, and the relief asked by the mortgage trustee was equitable. By the original complaint, it was sought to restrain the property from being sold under an execution on the Berg judgment. Berg, by his cross-complaint, sought to collect the judgment in a manner other than by the levy of an execution. The purpose, on one side, was to prevent the collection of the judgment, and on the other, to collect it. We think that the issue raised by the cross-complaint was sufficiently germane to the subject matter of the original action to be properly triable therein. As stated, all the parties were asking equitable relief. They were all before the court and their respective contentions fully heard. No prejudice has resulted by reason of the trial of issues of the cross-complaint in this action."

See, also, *Miller v. Lewis,* 138 Wash. 167, 244 Pac. 400.

Furthermore, there is no merit to the objection that the several affirmative causes of action of the cross-complaint were improperly joined. Rule II of Rules of Pleading, Procedure and Practice adopted by this court, provides:

"All persons may be joined in one action, as plaintiffs, in whom any right to relief in respect of, or arising out of, the same transaction or series of transactions, is alleged to exist, whether jointly, severally or in the alternative, where, if such persons brought separate actions, any common question of law or fact would arise, . . ." Rem. 1927 Sup., § 308-2.

We conclude that the lower court erred in sustaining the demurrer to the cross-complaint.

Judgment reversed.

TOLMAN, C. J., BEALS, MILLARD, and FULLERTON, JJ., concur.