**Application of Ernest KABATH, Petitioner,**

**v.**

**Frank D. O'CONNOR, District Attorney of Queens County, Respondent.**

**No. 64–M–914.**

United States District Court
E. D. New York.

Oct. 23, 1964.

918

Herbert J. Miller, and Bertram Miller,. Kew Gardens, N. Y., for petitioner, Bertram Miller, of counsel.

Louis J. Lefkowitz, Atty. Gen., of State of New York, for respondent, Herbert J Wallenstein, Joel Lewittes, Asst. Atty. Gen., of counsel.

BARTELS, District Judge.

This is an application by petitioner (Kabath) initiated by an order to show cause why a subpoena issued by the District Attorney of Queens County ordering petitioner to appear before the Grand Jury in connection with an investigation involving "John Doe" and "Richard Roe", should not be quashed. In the affidavit accompanying the order which contained a stay, the petitioner states that the only evidence to be submitted to the Grand Jury are transcripts of wiretapping obtained in violation of Section 605 of the Federal Communications Act (47 U.S. C.A. § 605), and that he is an aggrieved party because he would be called upon to substantiate illegally obtained evidence.

The respondent moved to dismiss the petition upon the grounds that (i) it fails to state a claim upon which relief can be granted, (ii) the Court lacks jurisdiction over the subject matter, (iii) petitioner has failed to show immediate and irreparable injury, and (iv) a dismissal is required by Rules 56 and 65(b), Fed.Rules Civ.Proc., 28 U.S.C.A.

In reply, the petitioner submitted another affidavit executed not by him but by his attorney, setting forth new matters to the effect that Kabath is a police officer and a target of an investigation and will be called upon to testify concerning his alleged participation in telephone conversations which were tapped or to give "other similar self-incriminating testimony", and that Kabath has been requested to sign a waiver of immunity which if he refuses to sign, will result in his dismissal from the Police Department

pursuant to Section 1123 of the New York City Charter.[1] Kabath's attorney further avers that this Court "is not being called upon to enjoin the process of the State Court".

■■ While a motion to quash a subpoena may be properly brought before the State court which has jurisdiction and supervision over a grand jury, no authority can be found for a motion of this kind in the Federal court covering a subpoena returnable before a State grand jury. No indictment has been presented against the petitioner in the State court and no action has been instituted or complaint filed in the Federal court in connection with the State proceedings, so that, in effect, the motion is a disjointed application for summary relief unsupported by any complaint; consequently it does not comply with Rules 3, 4 and 5 of the Federal Rules of Civil Procedure, 28 U.S.C.A. For that reason it deserves dismissal. Rather than rely upon such procedural defects, the Court believes that in the interests of expediency, the application should be considered as a complaint and motion seeking injunctive relief against the District Attorney from compelling the petitioner to give self-incriminating testimony or from offering wire-tap evidence before a State grand jury. Despite the petitioner's statement to the contrary, this is the nature of his application and the respondent has treated the motion accordingly.

■ Petitioner asserts that he is faced with the dilemma of being forced to testify against himself in violation of the Fourth and Fifth Amendments or, in the

---

1. "If any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or to answer any question regarding the property, government or affairs of the city or of any county included within its territorial limits, or regarding the nomination, election, appointment or official conduct of any officer or employee of the city or of any such

county, on the ground that his answer would tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any such matter in relation to which he may be asked to testify upon any such hearing or inquiry, his term or tenure of office or employment shall terminate and such office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency."
(§ 1123, New York City Charter)

alternative, of being dismissed from his position for refusing to sign a waiver of immunity. He seeks relief in this Court from this agonizing choice, but does not suggest the basis of this Court's jurisdiction except by the general statement that his constitutional rights are being violated. This *per se* is not sufficient.[2] If the petitioner is directly aggrieved by any threatened violation of his Federal constitutional rights by the State or the City of New York,[3] he will have standing in this Court for redress.[4] Predicated upon the nature of the relief petitioner seeks, jurisdiction might be found in a proper case in (1) 28 U.S.C.A. § 1343 (3),[5] granting this Court jurisdiction to redress the deprivation under color of any State law of any right secured by the Constitution of the United States and (2) 28 U.S.C.A. § 1337, authorizing this Court to entertain a suit arising out of any Act of Congress regulating commerce, such as a violation of Section 605 of the Federal Communications Act of 1934 (47 U.S.C.A. § 605).

■■■■ The difficulty posed by petitioner's position is his inability at this stage of the proceeding to set forth a cause of action upon which this Court can grant relief. It is elementary that the petitioner cannot be compelled to relinquish his claim for protection against self-incrimination under the State Constitution or the Fifth Amendment. In fact, under Article 1, § 6 of the State Constitution [6]

2. See Louisville & N. R. Co. v. Mottley, 1908, 211 U.S. 149, 29 S.Ct. 42, 53 L. Ed. 126; 2 Moore's Federal Practice (2d ed.) ¶ 8.09(1).

3. The Fourth and Fifth Amendments are now applicable to State proceedings. Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Malloy v. Hogan, 1964, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.

4. See Joint Anti-Facist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817.

5. This section states in part:
"The district courts shall have original jurisdiction of any *civil action* authorized by law to be commenced by any person:
      *      *      *      *      *
"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States * * *." (Emphasis supplied)
There is no "civil action" pending in this Court as indicated above, unless the Court treats petitioner's application as a complaint coupled with a motion.

6. "No person shall be held to answer for a capital or otherwise infamous crime (except in cases of impeachment, and in cases of militia when in actual service, and the land, air and naval forces in time of war, or which this state may keep with the consent of congress in time of peace, and in cases of petit larceny, under the regulation of the legislature), unless on indictment of a grand jury, and in any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him. No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled in any criminal case to be a witness against himself, providing, that any public officer who, upon being called before a grand jury to testify concerning the conduct of his present office or of any public office held by him within five years prior to such grand jury call to testify, or the performance of his official duties in any such present or prior offices, refuses to sign a waiver of immunity against subsequent criminal prosecution or to answer any relevant question concerning such matters before such grand jury, shall by virtue of such refusal, be disqualified from holding any other public office or public employment for a period of five years from the date of such refusal to sign a waiver of immunity against subsequent prosecution, or to answer any relevant question concerning such matters before such grand jury, and shall be removed from his present office by the appropriate authority or shall forfeit his present office at the suit of the attorney-general.
"The power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connection with such inquiries, shall never be suspended or impaired by law.
"No person shall be deprived of life, liberty or property without due process of law." (Art. 1, § 6, State Constitution)

a prospective defendant or one who is a target of an investigation may not be called or examined before a grand jury and a subpoena in such a case is a form of compulsion.[7] Consequently, his claim must be based upon the invalidity of the provisions of the State Constitution and the City Charter which exclude him from public office because of his invocation of the privilege against self-incrimination granted under the State Constitution and the Fifth Amendment upon the ground that such provisions are violative of due process.[8] But his application does not reveal that he has been questioned or has claimed the protection of Article 1, § 6 of the State Constitution or of the Fifth Amendment or has been threatened with dismissal because of his refusal to sign a waiver. It has been settled that petitioner cannot claim the privilege against self-incrimination in advance of questions actually propounded. People v. Laino, 1961, 10 N.Y.2d 161, 218 N.Y.S.2d 647, 176 N.E.2d 571. Upon this state of the record it is impossible to ascertain whether petitioner is in a position to now assert his right to protection against self-incrimination and if so, whether he is threatened with deprivation of that protection upon the penalty of a dismissal by reason of his refusal to sign a waiver. The gravamen of his complaint is based not upon actual or threatened wrongs except insofar as a request to sign a waiver may be so construed, but upon anticipated wrongs. Under the doctrine of abstention by the Federal court in the exercise of its authority based upon due regard for the independence of the State government,[9] the determination of whether any future conduct of the petitioner may be violative of the pertinent provisions of the State Constitution or the City Charter is, in the first instance, a matter for the State courts. If such conduct is found to fall within the prohibitions or subject to the penalties of the above provisions, then the constitutionality of those provisions as applied to the conduct of the petitioner, may then be considered by this Court.[10]

### Civil Rights Claim

■■ It is obviously unnecessary to proceed further to dispose of this application. Nevertheless, in order to forestall other applications of a similar nature in connection with the pending investigation, it is advisable to consider the other grounds suggested for injunctive relief. Before this Court can grant injunctive relief under the Civil Rights Act, 28 U.S.C.A. § 1343(3), it is bound to consider (1) the ban of 28 U.S.C.A. § 2283,[11] prohibiting a Federal court from staying State court proceedings except as expressly authorized by an Act of Congress and (2) the well settled judicial principle of comity, established independently of the statutory prohibition, forbidding Federal interference with State proceedings, particularly criminal proceedings, except in exceptional circumstances. Douglas v. City of Jeannette, 1943, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324. Unless it is clear, therefore, that a petitioner cannot otherwise protect his constitutional rights, 28 U.S.C.A. § 1343(3), providing for the redress of civil rights, cannot be treated as authority for injunctive relief upon the ground that it is an exception to the prohibitions set forth in (1) and (2) above. Baines v. City of Danville, 4 Cir., 8/20/64, 337 F.2d 579. There has

7. People v. Steuding, 1959, 6 N.Y.2d 214, 189 N.Y.S.2d 166, 160 N.E.2d 468; People v. Laino, 1961, 10 N.Y.2d 161, 218 N.Y.S.2d 647, 176 N.E.2d 571.

8. Slochower v. Board of Higher Education of the City of New York, 1956, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692.

9. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971.

10. NAACP v. Alabama ex rel. Flowers, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325.

11. "A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." (28 U.S.C.A. § 2283)

**922**

been no demonstration that the petitioner's constitutional rights cannot otherwise be protected except by injunctive relief. Indeed the contrary appears.[12]

### Wire-Tap Evidence

 Turning to the alleged violation of Section 605 of the Federal Communications Act, the Supreme Court has clearly stated that Congress did not by its enactment of this section intend to supersede a State rule of evidence which permits the use at a trial and before a grand jury of wire-tap evidence obtained in violation of the section. Schwartz v. State of Texas, 1952, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231; Pugach v. Dollinger, 2 Cir. 1960, 277 F.2d 739, aff'd, 1961, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed. 2d 678. Accordingly, the general equity power of this Court will not be exercised to restrain the use of this evidence and thus disrupt by a flanking movement a State criminal prosecution. Due process is not violated by the refusal of this Court to subvert the effective prosecution of local crime in the State courts by a piecemeal trial of collateral issues. Stefanelli v. Minard, 1951, 342 U.S. 117, 123, 72 S.Ct. 118, 96 L.Ed. 138; Cleary v. Bolger, 1963, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed. 2d 390. "Our question is not whether a remedy is available for such an illegality, but whether it is available in the first instance in a federal court. Such a problem of federal judicial control must be placed in the historic context of the relationship of the federal courts to the states, with due regard for the natural sensitiveness of the states and for the appropriate responsibility of state courts to correct the action of lower state courts and state officials." Snowden v. Hughes, 1944, 321 U.S. 1, 16, 64 S.Ct. 397, 405, 88 L.Ed. 497.

For the above reasons the motion to quash the subpoena must be and is hereby denied.

Settle order within ten (10) days on two (2) days' notice.