461 P.2d 706

William E. THORESEN, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, IN AND FOR MARICOPA COUNTY; Honorable Morris Rozar, Judge of the Superior Court of the State of Arizona, in and for Maricopa County, and the real party in interest, Fred MILLER, Respondents.

No. 1 CA–CIV 1219.

Court of Appeals of Arizona, Division 1.

Department B.

Dec. 3, 1969.

Rehearing Denied Jan. 8, 1970.

Review Denied Feb. 10, 1970.

---

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John H. Westover, Phoenix, for petitioner.

Gust, Rosenfeld & Divelbess, by Robert T. Murphy, Phoenix, for respondents.

HAIRE, Judge.

The petitioner, William E. Thoresen, seeks issuance of an original writ of prohibition by this court prohibiting the enforcement of certain discovery orders made by the respondent trial judge in a civil action pending in the Superior Court, in which petitioner is the defendant and the respondent Fred Miller is the plaintiff. The petition has for its basis the privilege against self-incrimination.

The complaint filed by the plaintiff Miller alleges an assault and battery upon his person by Thoresen, and seeks "general" damages in the amount of $5,000.00, and punitive damages in the amount of $50,000.00. The plaintiff in due course served upon Thoresen a set of interrogatories pursuant to Rule 33, Rules of Civil Procedure, 16 A.R.S. Nine of the interrogatories, numbers 1, 2, 5, 6, 7, 8, 9, 502 and 510, are in issue here. Six of these interrogatories seek to ascertain in detail the extent of petitioner's property, including all bank accounts, real property, securities, tangible personal property, and interests in insurance policies and trusts. Some of these six interrogatories also seek to learn the date of acquisition of such property, and all seek certain other data, relating to purchase prices, value, and the identity of other

persons having an interest in the property. The three other interrogatories in issue seek to learn petitioner's income for the first six months of 1969, his addresses during the past five years, and the nature of petitioner's involvement in any previous civil lawsuit.

Petitioner filed no objections to any of the interrogatories. After seeking and receiving from the plaintiff two extensions of the time in which to respond, petitioner filed his set of answers. With respect to each of the interrogatories here in issue, petitioner's only response was the statement, "I refuse to answer on the grounds that it may tend to incriminate me."

Shortly thereafter, the plaintiff filed a motion to compel answers to these interrogatories. He also filed at the same time, pursuant to Rule 34, a motion to compel production of each of petitioner's federal income tax returns for the preceding five years. The latter motion was accompanied by an affidavit of plaintiff's counsel and a memorandum of points and authorities to the effect that since punitive damages were claimed, production of the tax returns was essential so that plaintiff could have an accurate picture of the petitioner's wealth to present to the jury on that issue.

In response to these motions, petitioner made and filed an affidavit in support of his claim of "5th Amendment" privilege. No oral testimony was adduced at either of the hearings on the motions, so that this affidavit, dated October 24, 1969, furnishes the sole testimonial basis for petitioner's claim. It reads in substantive part as follows:

"This Defendant claims that to require him to produce such copies of the Federal Income Tax Returns may tend to incriminate him and this affidavit is made for the purpose of demonstrating the validity of the claim of the 5th Amendment privilege.

"The Internal Revenue Service of the United States of America is at present conducting an investigation with respect to your Affiant. There has been periodically an assignment of such investigation either to the San Francisco Division of the Internal Revenue Service or to the Phoenix Division of the Internal Revenue Service and both written and oral communications have taken place between representatives of the Internal Revenue Service and your Affiant with respect to such investigation. If your Affiant is compelled to produce copies of the Federal Income Tax Returns, then the Plaintiff will attempt to inquire into the facts giving rise to the information contained in the Federal Income Tax Returns and any such information elicited by the Plaintiff in this matter or his counsel may tend to assist the Internal Revenue Service in any action which it may propose to take against your Affiant. Thus, any exposure whatsoever of the information contained in the Income Tax Returns in this civil action may tend to incriminate your Affiant.

"Plaintiff in this action filed a criminal complaint against this Defendant in the Municipal Court of the City of Phoenix, State of Arizona. At the time of the trial upon such criminal complaint, one of the members of the firm of Plaintiff's counsel herein, Carl Schellenberg, sat at the counsel table for the City Attorney and assisted the City Attorney in prosecuting the criminal proceeding against this Defendant. It thus appears that information procured by Plaintiff's counsel from the income tax returns of this Defendant may well be used in a similar way by Plaintiff's counsel, namely in attempting to prosecute this Defendant in a criminal proceeding in which Plaintiff's counsel has no legitimate interest.

"A claim is now being asserted against this Defendant by the State of California whereby the State of California is claiming this Defendant has not paid taxes to the State of California. Your Affiant is reliably informed and believes that there are criminal penalties under the laws of the State of California applicable to certain factual situations in which taxes

have not been paid. Your Affiant alleges that information contained in his Federal Income Tax Returns may possibly tend to incriminate him under the laws of the State of California on the basis outlined above.

"Granting the order sought by the Plaintiff requires the Defendant to answer whether or not he has filed Federal Income Tax Returns for the years in question. This disclosure alone may tend to incriminate him under the laws of the United States of America. The information contained in the Federal Income Tax Returns if produced, or the failure to file them if disclosed, may tend to incriminate the Defendant under the laws of the states in which the Defendant has resided or has earned income during the years in question. The granting of the order requires the revealing of information as to whether income tax returns for particular years have in fact been filed. Disclosure of this information might not only subject the Affiant to federal liabilities and prosecutions but various state liabilities and prosecutions."

The trial judge granted plaintiff's motion to compel production of the tax returns. While upholding a claim of privilege with respect to certain of the interrogatories not here in issue, the trial judge ruled with only minor qualifications, unquestioned here, that the petitioner was required to answer all of the interrogatories concerning his property, and his income for the first six months of 1969. Petitioner was also required to list any address where he had resided for over six months in the past five years, and any civil lawsuit in which he was a party and in which his wealth was an issue or in which he had recovered a judgment.

■ Prohibition is a proper remedy in the case of a nonappealable discovery order. Dean v. Superior Court, 84 Ariz. 104, 324 P.2d 764, 73 A.L.R.2d 1 (1958); *see also* Phelps Dodge Corp. v. Superior Court, 7 Ariz.App. 277, 438 P.2d 424 (1968). The remedy seems particularly appropriate where the privilege against self-incrimination is claimed, since the threatened harm of an assertedly unconstitutional disclosure cannot be remedied by appeal. The cat, once out of the bag, cannot be recaptured.

Tangential to the privilege issue, petitioner attempts to make another argument, in which it is asserted that he will suffer a "massive invasion of privacy" if discovery is permitted. The argument was again characterized by counsel in oral argument as being based upon "invasion of privacy". We accept petitioner's characterization, and note specifically that he has not raised any issue as to whether "good cause" for the production of the income tax returns was shown in the trial court. Nor does petitioner argue that the tax returns are absolutely privileged. See generally Annot., 70 A.L.R.2d 240, 246 (1960).

■ Petitioner appears in his "invasion of privacy" argument to take issue with the relevance of evidence concerning wealth. In so doing, however, he acknowledges the majority rule holding that evidence of a defendant's wealth is admissible on the issue of punitive damages. Annot., 16 A.L.R. 771, 838 (1922); Annot., 123 A.L.R. 1115, 1136 (1939); 1 B. Jones, The Law of Evidence Sec. 180 (5th ed. 1958). That Arizona would follow such a rule is indicated by Hageman v. Vanderdoes, 15 Ariz. 312, 138 P. 1053, L.R.A.1915A, 491 (1914), in which the wealth of the defendant was made an issue by the pleadings in connection with a claim for exemplary damages in an assault and battery action, and testimony approximating the value of the defendant's property was held admissible. Pretrial discovery of a defendant's financial condition was allowed in Lewis v. Moody, 195 So.2d 260 (Fla.App.1967), a case strikingly similar in its liability aspects to the case at bar. *See also* Annot., 27 A.L.R.3d 1375 (1969); State ex rel. Hall & Riley Quarries, etc. v. Cook, 400 S.W.2d 39 (Mo.1966). Petitioner has not cited any case or other authority in support of his claim of an invasion of privacy, and we think the cases noted above are dispositive of the matter.

**66**

We proceed to the claim of privilege. The privilege against compulsory self-incrimination is guaranteed by article 2, section 10 of the Arizona Constitution, A.R.S. and by the fifth amendment to the United States Constitution, which is now applicable to the states. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The privilege extends not only to answers which would in and of themselves support a criminal conviction, but also to answers which would furnish a link in the chain of evidence needed to prosecute. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The privilege may be invoked when the claimant has reasonable cause to apprehend danger of incrimination. Hoffman v. United States, *supra*; Phelps Dodge Corp. v. Superior Court, *supra*. The claimant must, however, show a "real danger", and not a "mere imaginary possibility" of prosecution. Rogers v. United States, 340 U.S. 367, 374–375, 71 S. Ct. 438, 95 L.Ed. 344 (1951); *compare* Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). Although claimable in a civil proceeding, the privilege was not intended " * * * to affect the rights of litigants in the ordinary civil action." Phelps Dodge Corp., *supra, 7* Ariz. App. at 284, 438 P.2d at 431.

A person claiming the privilege " * * * may not be compelled to do more than show that the answer is likely to be dangerous to him, else he will be forced to disclose those very facts which the privilege protects." L. Hand, J., in United States v. Weisman, 111 F.2d 260, 262 (2d Cir. 1940), quoted in Phelps Dodge Corp., *supra, 7* Ariz.App. at 280, 438 P.2d at 427.

It is, however, always for the court and not the witness to determine whether there is a proper basis for invoking the privilege:

"The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself —his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified * * *."

(Hoffman v. United States, *supra,* 341 U.S. at 486, 71 S.Ct. at 818).

The facts of each particular case are controlling and few general rules can be drawn regarding the degree to which a showing of specific danger is required. A witness need not conclusively demonstrate that his answers will subject him to prosecution, but it is fair to state that in order to effectively invoke the privilege, a witness must establish a factual predicate from which the court can, by use of "reasonable judicial imagination" (aided by suggestions of counsel), conceive of a sound basis for the claim. See generally Zonver v. Superior Court, Cal.App., 76 Cal.Rptr. 10 (1969).

Since the offense of income tax evasion is the one prominently suggested by petitioner's affidavit, it is pertinent to note the extent to which the Fifth Amendment is given effect in governmental tax investigations. An instructive case is Wild v. United States, 362 F.2d 206 (9th Cir. 1966), which was a proceeding to enforce a special revenue agent's summons to produce business records. The court in Wild held that so long as the government agent seeks information for the "legitimate purpose" of ascertaining the correctness of a return and civil tax liability, as opposed to preparation of a criminal charge, the Fifth Amendment does not bar enforcement of the investigative summons.

With this background, we consider the claim of privilege as it relates to the tax returns. Since petitioner's affidavit is directed specifically to the tax returns, we review it in detail. Aside from stating the existence of an investigation, the gravamen of the second paragraph of the affidavit as quoted above is a charge that after production, " . . . then the Plaintiff will attempt . . . to elicit further facts and information which may tend to incriminate." The Fifth Amendment privilege, however, does not prevent the asking of potentially incriminating questions, Communist Party of United States v. Subver-

sive Activities Control Board, 367 U.S. 1, 108, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961), and it cannot be claimed in advance of questions actually propounded, Kabath v. O'Connor, 234 F.Supp. 917, 921 (E.D.N.Y. 1964).

The next paragraph of petitioner's affidavit suggests that plaintiff's counsel "may well" make available whatever information is furnished to governmental prosecuting authorities. This adds nothing, because we are obliged to assume that information disclosed will come to the attention of the appropriate authorities. The fourth paragraph of the affidavit as quoted above indicates that the State of California is asserting a claim against petitioner for unpaid taxes. Without any explanation at all of the nature of the claim, petitioner states that he is informed and believes that criminal sanctions are applicable in California to "certain factual situations in which taxes have not been paid." Counsel has not advised us of the nature and basis of such sanctions, but apart from that and the purely hypothetical and conclusory nature of the petitioner's statement, we do not think the privilege can be claimed on these grounds. State administrative tax authorities have the power by appropriate request independent of petitioner's consent to inspect federal tax returns for the purposes of state tax administration. 26 U.S.C. Sec. 6103(b) (2) (1964). The petitioner in this case is not being asked to answer or affirm anything new. The returns are either in existence or they are not, and whatever is of record with the taxing authorities remains the same. The same consideration and the fact that the federal government is obviously aware of whether petitioner has or has not filed federal income tax returns for the years in question disposes of the last quoted paragraph of the affidavit. We state again for emphasis that "good cause" has not been placed in issue.

The interrogatories present a somewhat closer question, but we reach the same conclusion as to them. The interrogatories concerning petitioner's property are comprehensive and searching, but

we find no sound and realistic basis in the showing made to justify the privilege. For all that appears, the federal income tax investigation to which petitioner refers could be a routine audit with respect to years for which any criminal prosecution would be barred by limitations. There is nothing to indicate that any controversy over taxes between petitioner and either the federal government or the State of California arises out of anything but the most innocent of conceivable circumstances. We do note allusions by petitioner's counsel in the transcript to the fact that petitioner has been the subject of criminal prosecutions, but it has nowhere been intimated that any of these prosecutions had or has anything whatever to do with federal or other tax liabilities or any other offense in which the extent of petitioner's property might be pertinent. There is likewise no intimation that petitioner has not come by whatever fortune he has honestly. Any citizen and particularly one of considerable means may, in this day of proliferating tax statutes and regulations, be involved in a good faith controversy with the taxing authorities over tax liabilities. While the judiciary is enjoined to be sensitive and imaginative in this area, we cannot either supply a claimant with a tenable factual hypothesis or throw up our hands and abdicate our responsibility to find a sound and realistic legal basis for the privilege claimed.

Most of the foregoing observations apply to the three remaining interrogatories which seek information other than a listing of property. We have paused at the matter of petitioner's residences, but again, we find lacking a realistic showing of possible jeopardy.

We have no quarrel with any of the authorities relied upon by petitioner. We agree with the court's observation in Zonver, *supra,* that the basis for the claim of privilege need not be spelled out "in prurient detail", 76 Cal.Rptr. at 14, but in that case the tendency of the requested answers to reveal the offense of adulterous cohabitation is clear. Petitioner also cites the case of Cohen v. Superior Court, 173

Cal.App.2d 61, 343 P.2d 286 (1959), which involved a civil action similar to the present one. But the claimant of the privilege in Cohen had been repeatedly identified as a notorious racketeer and gangster, and was under active investigation by federal and state legislative "rackets" committees, in connection with alleged large-scale criminal or at least questionable business operations. We have no such case on the record before us here.

In Kirtley v. Abrams, 184 F.Supp. 65 (E. D.N.Y.1960), which involved a comprehensive examination into the financial affairs of a judgment debtor, the court was unable to find a realistic basis for a claim of privilege against self-incrimination notwithstanding the judgment debtor's recent indictment by a federal grand jury and the investigation of his business affairs by various agencies with a view toward possible prosecution.

Such a holding is well beyond the ruling we make on the facts before us here.

Petition denied.

EUBANK, P. J., and JACOBSON, J., concur.