[No. 11429-8-I. Division One. February 28, 1983.]

SEVENTH ELECT CHURCH IN ISRAEL, ET AL, *Respondents,*
v. GERALD L. ROGERS, *Appellant.*

*Betts, Patterson & Mines, P.S., Jeffrey Grant,* and *William Fite* (*Grant & Kosnett* and *James V. Kosnett,* of counsel), for appellant.

*Freese & Freese, Inc., Ralph I. Freese, Murphy & McGowan,* and *Richard J. Moore,* for respondents.

CALLOW, J.—Gerald Rogers appeals an order of the Superior Court which adjudged him in contempt of court and ordered him committed to jail for his refusal, based on

his privilege against self–incrimination, to answer a question in proceedings supplemental to a judgment brought by the Seventh Elect Church in Israel, et al. *See Seventh Elect Church v. First Seattle Dexter Horton Nat'l Bank,* 167 Wash. 473, 10 P.2d 207 (1932); *Seventh Elect Church v. First Seattle Dexter Horton Nat'l Bank,* 162 Wash. 437, 299 P. 359 (1931) (historical background of the Seventh Elect Church in Israel). The issue presented is whether Gerald Rogers established a sufficient factual predicate to entitle him to assert his Fifth Amendment rights not to incriminate himself.

This appeal is one of three which have arisen out of examinations in supplemental proceedings in King County Superior Court. In January of 1981, the Seventh Elect Church of Israel, Arne Skogseth, and Ambrose Schwader (hereinafter collectively referred to as the Church), recovered a judgment against Gerald L. Rogers and the marital community composed of Gerald L. Rogers and Priscilla A. Rogers, jointly and severally. Unable to satisfy the judgment, it initiated supplemental proceedings pursuant to RCW 6.32.010 which provides in part that,

> At any time within ten years after entry of a judgment for the sum of twenty–five dollars or over upon application by the judgment creditor, such court or judge may, by an order, require the judgment debtor to appear . . . to answer concerning the same . . .

The examination of Gerald Rogers commenced on March 2, 1982. After stating his name and address, Gerald Rogers refused to answer the question, "How long have you resided there?", claiming a Fifth Amendment right to not incriminate himself. At that point, Gerald Rogers' counsel submitted to the trial court two affidavits which he asserted supported Gerald Rogers' claim to a Fifth Amendment privilege. These affidavits indicated that Gerald Rogers was the subject of several federal and state criminal investigations but that no criminal proceedings had yet commenced. Counsel further argued that the answer to the subject question might further implicate Gerald Rogers in the

pending investigations and could subject him to criminal prosecution.

The trial court's response to the showing was to request that an in camera hearing be conducted so that the court could evaluate the validity of the claim of privilege. Counsel for Rogers declined the opportunity for an in camera hearing asserting that sufficient external circumstances had been shown to support the privilege claim. Finding that Rogers had not shown sufficient facts to sustain the claim of privilege, the trial court again offered counsel for Rogers an opportunity to make a further showing in camera which counsel declined.

The examination then proceeded and the subject question was again put to Gerald Rogers. The trial court found that the answer to the question could not incriminate Gerald Rogers in connection with any present or potential proceedings, and he was directed to answer the question. Rogers continued to assert the privilege. The court found Rogers in contempt and ordered him incarcerated until he answered the question, but stayed the order pending this appeal.

The sole issue is whether Gerald Rogers established sufficient facts to entitle him to assert his Fifth Amendment right to not incriminate himself.

Although RCW 6.32.200[1] grants a limited immunity to witnesses who testify in supplemental proceedings authorized by RCW 6.32, a witness may assert his or her Fifth Amendment privilege against self–incrimination notwithstanding the statutory grant of immunity. *Eastham v. Arndt,* 28 Wn. App. 524, 624 P.2d 1159 (1981).

---

[1]RCW 6.32.200 states in part:

"A party or witness examined in a special proceeding authorized by this chapter is not excused from answering a question on the ground that his examination will tend to convict him of a commission of a fraud, or to prove that he has been a party to or privy to or knowing of a conveyance, assignment, transfer or other disposition of property for any purpose . . . But an answer cannot be used as evidence against the person so answering in a criminal action or criminal proceeding."

The Fifth Amendment claim of the privilege against self–incrimination must be judged by the standards of *Hoffman v. United States,* 341 U.S. 479, 95 L. Ed. 1118, 71 S. Ct. 814 (1951). The *Hoffman* Court determined that the assertion of the privilege against self–incrimination "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman,* at 486; *see Eastham v. Arndt, supra.* "Without this requirement, *any* judgment debtor could assert his Fifth Amendment privilege, and judgment creditors would be powerless to enforce their judgments." *Compton v. Societe Eurosuisse, S.A.,* 494 F. Supp. 836, 838 (S.D. Fla. 1980).

> The courts cannot accept Fifth Amendment claims at face value, because that would allow witnesses to assert the privilege where the risk of self–incrimination was remote or even nonexistent, thus obstructing the functions of the courts.

*United States v. Melchor Moreno,* 536 F.2d 1042, 1046 (5th Cir. 1976). "It is well established that the privilege protects against real dangers, not remote and speculative possibilities." *Zicarelli v. New Jersey Comm'n of Investigation,* 406 U.S. 472, 478, 32 L. Ed. 2d 234, 92 S. Ct. 1670 (1972).

However, the witness need not show that an answer would support a criminal conviction, but need only demonstrate that the answer would furnish a link in the chain of evidence needed to prosecute the witness for a crime. *Hoffman,* at 486. It is the court's function to determine whether silence is justified and must require the witness to answer if, based upon the particular facts of the case, it clearly appears that silence is not warranted. *Hoffman,* at 486–87. Such determination is "vested in the trial court to be exercised in its sound discretion under all of the circumstances then present." *State v. Parker,* 79 Wn.2d 326, 332, 485 P.2d 60 (1971).

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dan-

gerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

*Hoffman,* at 486–87.

The difficulty in this case arises because the incriminating nature of the answer to the subject question is not evident from the implication of the question. In other words, the question, "How long have you resided there?", would not seem to create any kind of criminal liability. This court has determined that in such cases "'[t]he only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available.'" *Eastham,* at 531 (quoting *United States v. Weisman,* 111 F.2d 260, 262 (2d Cir. 1940)). Thus, the judgment debtor "'must establish a factual predicate from which the court can, by use of "reasonable judicial imagination" (aided by suggestions of counsel), conceive of a sound basis for the claim.'" *Eastham,* at 531–32 (quoting *Thoresen v. Superior Court,* 11 Ariz. App. 62, 66, 461 P.2d 706 (1969)). In making such a showing, the *Eastham* court approved of a procedure in which the trial court could conduct an in camera hearing,[2] thereby preserving the confidences of the witness, where external circumstances do not support the privilege claim. *Eastham,* at 534 n.2.

> In such a case, the judge is simply providing the most favorable setting possible for the witness to "open the door a crack" where there is no other way for the witness

---

[2] "In such a hearing the witness need not reveal the details of his possible liability. But he must describe in general terms the basis of the liability actually feared. He must give a description that is at least adequate to allow the trial judge to determine whether the fear of incrimination is reasonable and, if reasonable, how far the valid privilege extends. This is to allow the trial judge to make a decision regarding the witness' obligation to answer each question as asked. A record can be made that is separate from the record kept of the proceedings in the courtroom. This record could be sealed and opened only for appellate review, if necessary." *United States v. Goodwin,* 625 F.2d 693, 702 (5th Cir. 1980).

to verify his claim. If, on the other hand, the court refuses to acknowledge the privilege and insists on in camera verification from the lips of the witness even though reasonable grounds for claiming the privilege appear in the surrounding circumstances, the court comes perilously close to doing what the fifth amendment forbids.

*In re Brogna,* 589 F.2d 24, 28 n.5 (1st Cir. 1978).

At the time of the assertion of the privilege by Gerald Rogers, the following showing was made based on affidavits submitted by his attorney:

1. Rogers was a defendant in two civil proceedings brought by the Securities and Exchange Commission against Gerald Rogers and others. One of these was being investigated and prepared for criminal prosecution. The other had been referred to the United States Department of Justice by the Securities and Exchange Commission.

2. Rogers was a defendant in a civil action being prosecuted by the State of California which alleged a number of state security violations.

3. In response to Internal Revenue Service charges of, *inter alia,* fraud, Rogers and his wife brought suit against the Commissioner of Internal Revenue.

4. The Federal Bureau of Investigation was conducting an investigation of a company with which Rogers and others were connected.

5. Criminal prosecution by the tax enforcement department of the Department of Justice was imminent. This was based upon two letters from IRS officials, stating that there had been a recommendation that criminal proceedings be instituted, and that Mr. Rogers' case had been forwarded to the Department of Justice.

Gerald Rogers' counsel further asserted that the answer to the subject question could be circumstantial evidence which would serve to furnish a multiple of links in the chain of evidence which would ultimately make Rogers criminally liable, either as a principal or aider and abettor.

Length of time living in a certain residence might

establish a standard of income, a standard of living and a standard of income for a certain period of time, and this could make the crime more severe than otherwise, if the individual had just been living at a certain place a short period of time.

. . . The length of time in a certain residence tends to show movement in and out of the State or in and out of the country. It tends to show that the individual may have been in contact with certain individuals at a certain time. The date or the time that the individual moved into a certain house or residence might coincide with a date that an entity which is later shown to be a fraudulent or criminal entity took control or became record title or surrendered record title on that property.

In view of all the circumstances, we concur with the trial court finding, based on the external showing without the additional detail which could have been provided in an in camera hearing, that Gerald Rogers did not establish sufficient facts to sustain the privilege claim. The incriminating nature of the question asked is not obvious from the question itself and a general showing of federal and state criminal investigations does not demonstrate that the answer to the question would result in self–incrimination.

Answering the question would not have subjected Rogers to potential federal or state prosecution for violation of securities laws or provided evidence necessary to such prosecution. Furthermore, Rogers did not establish a sufficient nexus between possible criminal prosecution related to tax matters and the question asked. Although length of time at a residence may establish the possibility of a "net worth" prosecution for income tax evasion since it could show an increase in assets over a short period of time with no showing of origin, Rogers did not demonstrate a basis for his apprehension. "The court must determine whether the claimant is '* * * confronted by substantial and "real," and not merely trifling or imaginary, hazards of incrimination." *Capitol Prods. Corp. v. Hernon,* 457 F.2d 541, 543 (8th Cir. 1972) (quoting *Marchetti v. United States,* 390 U.S. 39, 53, 19 L. Ed. 2d 889, 88 S. Ct. 697 (1968)). "[T]he

privilege cannot be invoked without a demonstration of a 'real and appreciable' risk of self–incrimination." *Priebe v. World Ventures, Inc.,* 407 F. Supp. 1244, 1245 (C.D. Cal. 1976); *see United States v. Kordel,* 397 U.S. 1, 9, 25 L. Ed. 2d 1, 90 S. Ct. 763 (1969).

■ We remand the cause for further proceedings. Rogers shall not be committed to jail unless upon further hearing he shall fail to answer all questions which are relevant, unless a clear danger of incrimination is specifically established with respect to each question. There is no blanket Fifth Amendment right to refuse to answer all questions, but rather, the privilege must be claimed as to each question. *Capitol Prods. Corp. v. Hernon, supra* at 542.

On remand, an in camera hearing should be conducted and the trial court is directed to consider any supplemental material submitted by Rogers concerning the possibility of incrimination. The trial court, in camera, should make a "particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well founded", *United States v. Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir. 1976).

DURHAM, A.C.J., and RINGOLD, J., concur.

Reconsideration denied March 29, 1983.

Review denied by Supreme Court June 3, 1983.