[Nos. 27030-3-I; 27034-6-I.   Division One.   December 13, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. HEATHER
BERKLEY, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. ROGER
PABLO, *Petitioner.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for petitioners.

*Seth R. Dawson, Prosecuting Attorney,* and *Constance Crawley, Deputy,* for respondent.

FORREST, J. — Heather Berkley and Roger Pablo appeal their convictions for driving while intoxicated arguing that the Fifth Amendment privilege against self-incrimination prevents them from being required to testify as to their financial condition at the time of arrest. We reverse.

1. Berkley.

On May 20, 1989, Heather Berkley was arrested for driving while intoxicated in Snohomish County. The arresting officer testified that Berkley displayed "thick" speech, her eyes were glassy and unfocused, she walked unsteadily, and smelled of alcohol. The officer told Berkley that she had the right to additional tests administered by a qualified person of her own choosing and at her own expense. Berkley took the BAC Verifier DataMaster test administered at the scene.

During pretrial motion argument in the Everett District Court, defense counsel asserted that the BAC Verifier Data-Master test results should be suppressed because the implied consent warning was misleading. Subsequently, the prosecutor introduced an affidavit stating the cost of inde-

pendent blood draws and analysis from various Snohomish County medical facilities to be $14. Berkley did not object. The prosecutor elicited from the trooper evidence that Berkley was employed at Providence Hospital as a pharmacist assistant and that she was the registered owner of the car.

When the prosecutor called Berkley to the stand to question her about her financial condition at the time of the arrest, Berkley's counsel indicated he would advise her to invoke her right against self-incrimination under the Fifth Amendment. The district court judge determined that Berkley had no right to the Fifth Amendment privilege because ability to pay was not, in the judge's opinion, a "substantive issue to the charge". The judge denied the motion to suppress based on Berkley's refusal to testify. Berkley was found guilty of driving while intoxicated after a stipulated trial.

2. Pablo.

On March 7, 1989, Roger Pablo was arrested for driving while intoxicated in Snohomish County. The arresting officer noticed that Pablo's speech was slurred, his balance was poor when exiting the car, and that he smelled of alcohol. The officer advised Pablo that any additional test would be at his own expense. Pablo took the BAC Verifier DataMaster test administered at the scene.

Prior to trial, Pablo moved to suppress the blood alcohol test. During the suppression hearing, the parties stipulated that Pablo had been given the improper implied consent warning. The prosecutor submitted the same type of affidavit describing the costs of independent blood tests. This was accepted into the record and, in reliance on this affidavit, the district court judge found the cost of an independent test to be $14.

The prosecutor made an offer of proof that Pablo had admitted to the arresting officer he had been working that day and was the registered owner of the truck he was driving. The prosecutor then requested Pablo be called to testify regarding his financial condition. Pablo's attorney asserted the privilege

against self-incrimination. The judge found Pablo had no Fifth Amendment right not to testify because his financial condition was collateral to the issues at hand. The judge denied the motion to suppress, finding Pablo waived his right to raise the motion by refusing to testify. A jury later convicted Pablo.

3. RALJ Appeal.

Both cases were consolidated on appeal. The Superior Court held that the defendants had no Fifth Amendment privilege to decline to testify about their financial status but it was error for the prosecution to conduct the questioning. According to the superior court judge, the court — not the prosecutor — was responsible for inquiry into the defendants' financial status. The Superior Court remanded the cases so that the lower court could determine the defendants' financial ability to pay for the tests at the time of the arrests.

Subsequently, a commissioner of this court granted the defendants' motion for discretionary review under RAP 2.3-(d)(3) as an issue in the public interest meriting decision by the appellate court.

## DISCUSSION

It is conceded that the warnings given the defendants were incorrect.[1] *State v. Bartels*, 112 Wn.2d 882, 774 P.2d 1183 (1989) held that an indigent driver could not make an understanding decision because he would be unaware that if he paid for an additional test he would be entitled to reimbursement.[2] As a result, the court remanded

each cause to permit the State to establish whether a defendant had the financial ability at the time of arrest to obtain an additional test. If the State can establish this, the results of that defendant's test should be admitted as the erroneous warning given that defendant would be "harmless beyond a reasonable

---

[1] *State v. Bartels*, 112 Wn.2d 882, 774 P.2d 1183 (1989).

[2] The court in *Bartels*, appearing to recognize that the test would have to be paid for at the time of arrest, perceived that the risk was that defendants who could raise the necessary money would not because they did not know they could be reimbursed.

doubt." If this is not established, the results of the blood alcohol content tests must be suppressed.

(Citation omitted.) *State v. Bartels, supra* at 890.[3]

■ Since most people are not so situated and the defendants wish to show that the warning was prejudicial as to them because of their indigency, it might seem logical that they should be required to make a showing as to whether they had the financial ability at the time of arrest to obtain the additional test. Under such a rule the trial court's holding that a defendant's refusal to testify or offer other evidence in support of his claim of prejudice would justify denial of the suppression motion. However, *Bartels* unequivocally placed the burden on the State to establish the defendant's financial ability.[4]

The defendants argue that the Superior Court violated their Fifth Amendment rights[5] in holding that they must testify as to their financial resources in order to enable the State to discharge its burden. The State argues that since the fact of indigency is irrelevant to guilt or innocence of driving while intoxicated and since indigency is not independently a crime, the defendants have no right to claim the Fifth Amendment privilege as to disclosure of their financial assets.[6]

---

[3]The court draws no distinction between "the financial ability at the time of arrest" and "indigency". However, it is the fact of "indigency" that is determinative, because indigency is required for reimbursement. The warning is only prejudicial where knowledge of the right to reimbursement could make a difference in the driver's decision, *i.e.*, when the driver is indigent. *Bartels*, at 890.

[4]We note that it is irrelevant that the defendants chose to raise the issue by a pretrial motion to suppress as the burden on the State remains the same.

[5]"The fifth amendment to the United States Constitution states in part that '[no person] shall be compelled in any criminal case to be a witness against himself . . .'. This right has been incorporated into the due process clause of the Fourteenth Amendment and therefore binds the state." *State v. Foster*, 91 Wn.2d 466, 473, 589 P.2d 789 (1979).

[6]The State's suggestion that by placing the burden of establishing lack of indigency on the State the Supreme Court intended to circumscribe Fifth Amendment rights which would otherwise exist is totally unpersuasive.

■ The extent of the privilege against self-incrimination in this context is succinctly summarized in *Seventh Elect Church v. Rogers*, 34 Wn. App. 105, 113, 660 P.2d 280, *review denied*, 99 Wn.2d 1019 (1983):

> The Fifth Amendment privilege extends not only to answers that would support a criminal conviction, but includes those which would furnish a link in the chain of evidence needed to prosecute the witness for a crime.

In most cases, as in *Seventh Elect Church v. Rogers*[7] and *Eastham v. Arndt*,[8] the issue is whether the risk of criminal prosecution is real or is merely fanciful or illusory and the privilege is being invoked to conceal information which for other reasons the individual does not want to disclose.

Here, however, the prosecution for driving while intoxicated is underway and the breath test results establishing a prima facie case of driving while intoxicated are available. There is no uncertainty or speculation as to the use to which the information will be put. If a defendant's answers to the questions fail to establish indigency, the breath test results will be admitted and constitute persuasive evidence of guilt. The only distinction between the typical case of testimony leading to the discovery of additional evidence and the testimony sought here is that rather than leading to additional evidence, this testimony might lead to the admission of evidence already in hand. For constitutional purposes we find the distinction to be one without a difference. No case is cited holding that the Fifth Amendment does not apply to testimony which would permit the introduction of otherwise inadmissible evidence, or is applicable only to testimony that will lead to the discovery of adverse evidence as distinct from known evidence. In practical terms the defendants are being required to testify against themselves by making adverse evidence admissible.

The State's reliance on *People v. Jeske*[9] is misplaced. In *Jeske*, the court held that the defendant had no Fifth Amend-

---

[7]34 Wn. App. 96, 103, 660 P.2d 294, *review denied*, 99 Wn.2d 1019 (1983).

[8]28 Wn. App. 524, 527-28, 624 P.2d 1159, *review denied*, 95 Wn.2d 1028 (1981).

[9]128 Mich. App. 596, 341 N.W.2d 778 (1983).

ment privilege where he sought court appointed counsel and made no showing that testimony about his financial status would incriminate him in a criminal proceeding. The analogy to a pretrial request for funds to provide counsel or to secure an expert witness is not persuasive and does not control the case before us. In those circumstances the defendant is affirmatively seeking state funding and the only adverse effect would be having to hire his own counsel. Here, the defendants risk supplying important evidence against themselves and are merely requiring the State to discharge a judicially imposed burden of establishing their ability to pay for the additional test. The privilege is being used defensively, as distinguished from those cases where a defendant wishes to use indigency as a predicate for state financial assistance.

We hold that the defendants were entitled to assert their Fifth Amendment privilege against self-incrimination when called to testify as to their financial resources in the context of determining whether they were prejudiced by the inadequate warning.

█ To discharge its burden, the State is, of course, entitled to offer any other relevant evidence as to the defendants' financial ability to obtain the additional test. The State's evidence that an additional blood test could be secured for the sum of $14 is not challenged. The court can take judicial notice that most people in our society either have or can easily secure the sum of $14. Absent any affirmative showing of indigency by the defendant through his testimony, or otherwise, only slight evidence is required to permit the court to make a finding that the defendant is financially able to secure the test. Pablo admitted to the arresting officer that he had been working that day and was a registered owner of the truck he was driving. At Berkley's trial, the officer testified that she was employed at Providence Hospital as a pharmacist assistant and was the registered owner of the car she was driving. Unrebutted, this information would have permitted the trial courts to make a finding that the defendants were able to pay for the additional test and, hence, the breath test results were admissible.

However, neither of the District Courts chose to make a finding as to the defendants' financial ability to obtain the

additional test based on this evidence and therefore the breath tests were admissible. We decline to make such a finding at the appellate level. On remand the District Court should make a finding as to whether the State's evidence is sufficient to establish the defendants' ability to pay for the additional test without any consideration of the defendants' refusal to testify. At such hearing, the defendants should be offered an opportunity to present evidence to rebut the compelling inference of their ability to pay. A retrial on the merits is necessary only if either defendant is found to have been unable to pay for the test at the time of arrest. At such a trial the breath test evidence would be excluded.

Both parties challenge the Superior Court's direction that inquiry into a defendant's financial resources should be conducted by the trial court, not by the State. In light of our holding, this issue will arise only where the defendant chooses to testify.

No authority was cited nor do we find any requiring the trial court to conduct such inquiry, nor do we find any policy reason for such a procedure under these circumstances. The examination should be conducted by counsel in the usual manner. If necessary to protect the witness from disclosing potentially incriminating evidence in the course of examining the basis for the claim of privilege, in camera examination by the court may be appropriate.[10]

Reversed and remanded for further proceedings consistent with this opinion.

PEKELIS, A.C.J., and BAKER, J., concur.

Review denied at 124 Wn.2d 1011 (1994).

---

[10]*Seventh Elect Church v. Rogers*, 34 Wn. App. at 104.