[No. 38392.    Department One.    October 13, 1966.]

DALLAS PETERSON *et al., Respondents,* v. CARL E. DAVID *et al., Defendants,* MAX D. HUGHES *et al., Appellants.*
DALLAS PETERSON *et al., Respondents,* v. MAX D. HUGHES *et al., Appellants.**

*Sanford Skidmore,* for appellants.

*McGregor & Halstead* and *Dwight A. Halstead,* for respondents.

FINLEY, J.—This is a consolidated case involving two actions seeking forfeiture of rights under real estate sales contracts. Mr. and Mrs. Max D. Hughes, the defendants who have appealed, argue that they were denied due process, in violation of art. 1, § 3, of the Washington Constitution, and the fourteenth amendment to the United States Constitution, by the proceedings below.

Dispute exists as to various facts of the procedural gymnastics involved; however, certain undisputed facts, ascertained with some difficulty from the briefs and the record, seem significant. In March 1963, Mr. and Mrs. Dallas Peterson, plaintiffs below, contracted to sell unimproved farm land, hereinafter referred to as the David property, to Mr. and Mrs. Carl David. Subsequently, the Davids assigned their interest in the property to the defendants Hughes. In February 1964, the Petersons entered into a contract with the

*Reported in 419 P.2d 138.

Hugheses whereby the Hugheses were to purchase another piece of real estate upon which a house was located, hereinafter referred to as the Hughes property. The Hugheses entered into possession, but failed to pay taxes and to insure the house as required by the contracts. On September 8, 1964, and in accordance with the contracts, the Petersons mailed notices to the Davids and the Hugheses of intent to forfeit the contracts because of the defaults. The Hugheses refused to accept delivery of this registered, special delivery letter, and took no action to attempt to reinstate the contract. On October 9, the Petersons gave notice that the contracts were forfeited. On January 7, 1965, the Petersons filed two complaints seeking declaration of forfeiture and quieting of title to both the David property and the Hughes property. Trial was first set for January and then reset for February 11, 1965, before which date the two cases were consolidated for trial.

At the time of trial, taxes, an irrigation toll assessment, and five monthly payments were due on the David property; and taxes, insurance payments, and five monthly payments were due on the Hughes property, although one monthly payment had been tendered to the escrowee, and refused. It actually appears that the only equity the Hugheses had in the Hughes property was $501, of which $500 was a note upon which nothing had been paid. On February 10, apparently because of a disagreement, Max Hughes was notified that Mr. Sullivan, his attorney, had withdrawn from the case. The transcript shows, however, that Mr. Sullivan nevertheless filed an answer on behalf of the Hugheses on February 11. On the morning of February 11, Max Hughes went to the courthouse where he saw Sullivan, who confirmed his withdrawal. Hughes appeared before the court, explained that he was without counsel, and asked for a continuance. The court told Hughes that he could have the continuance if he tendered all the money due into court or to the plaintiffs' attorney by the evening of the next day; otherwise, he was to appear for trial that afternoon. It should be noted here that the defendants Hughes in their answer alleged tender into court of the sums said to be due.

No such tender, however, was made. On the afternoon of February 11, plaintiffs apparently put in their evidence.

On the morning of February 18, 1965, Max Hughes appeared personally in court, and an attorney, Mr. Talbot, appeared for the Davids. Mr. Hughes stated later in an affidavit that he had conferred with Talbot concerning the case a few days earlier. Findings, conclusions, and decree in the action involving the David property were signed by Judge Lawless, who had heard the case on February 11. When Judge Lawless announced that entry of findings, conclusions, and decree in the action involving the Hughes property would be continued until later in the day, before Judge Day, Judge Lawless asked the defendants if they had any further objection to the proceedings. Both Hughes and Talbot stated that they had nothing further.

The defendants Hughes, now represented by new counsel, base one of their arguments on the alleged entry of findings of fact and conclusions of law on February 18, without notice to them, and particularly without the giving of 3 days notice as required by Rule of Pleading, Practice, and Procedure 52.08W. A review of the record establishes that this contention must fail. Affidavits show that letters were mailed to Talbot, attorney for the Davids, to Sullivan (in compliance with RCW 2.44.050, since he was still attorney of record for the Hugheses), and to the Hugheses themselves, by which three days notice of the entry of findings and conclusions was given. The more important point, however, is that Max Hughes appeared personally in court on February 18, which establishes either that the Hugheses received notice, or waived the right to notice, or in any event were not prejudiced in any way by the failure to receive notice, if they did not.

Defendants base their primary attempt to show a denial of due process on "failure of the court on February 11 to allow the defendant Hughes a continuance in order to obtain an attorney." First, it should be noted that the court did not *deny* the continuance, but rather granted it conditionally, a procedure which is well established. Rule of Pleading, Practice, and Procedure 40.04W; RCW 4.44.040.

It seems pertinent to mention that even a denial of a motion for a continuance is reversible error only when there is a manifest abuse of discretion. *Bennett v. Bennett,* 63 Wn.2d 404, 387 P.2d 517 (1963). Furthermore, when the denial of a requested continuance would be improper, the imposition of conditions may still be within the trial court's discretion. See *Reser v. Labude,* 103 Wash. 228, 173 Pac. 1093 (1918). In considering whether or not the trial court abused its discretion in the instant case by conditioning the continuance on the tender of payments, taxes, et cetera, which were due, we must not ignore the fact that the defendants were contesting forfeiture and had alleged in their answer the tender of such sums. It also appears that the next trial date would have been several months later, thus allowing the Hugheses continued free occupancy of the house and farm land and continuing to deprive the plaintiffs of the use and enjoyment of their property. In light of all the circumstances, it seems that the condition imposed by the trial court was reasonable and well within its discretion. An alternative basis for our conclusion in regard to this issue rests on the fact that Hughes appeared in court on February 18 and stated that he had no objection to the entry of findings and conclusions on that day. Even assuming arguendo that Hughes had a right to a continuance on terms less harsh than those actually imposed, it seems that right was relinquished or waived on February 18.

Although the issue merits consideration and is a close one, we are inclined to disagree with the contentions of plaintiffs that the appeal in this case is frivolous, was taken for delay only, and that damages should be assessed under Rule on Appeal 62.

The decision of the trial court should be affirmed. It is so ordered.

ROSELLINI, C. J., OTT and HALE, JJ., and RUMMELL, J. Pro Tem., concur.