[No. 43500. En Banc. May 8, 1975.]

W. Robert Stone, as *Administrator, Respondent*, v. The State of Washington, *Defendant*, Robert Gahagan, *Appellant*.

*Alan C. Stay*, for appellant.

*William W. Baker* (of *Anderson, Hunter, Dewell, Baker & Collins, P.S.*), for respondent.

Utter, J.—Robert Gahagan appeals from a judgment holding him in contempt for refusing, on grounds of possible self-incrimination, to answer questions asked him in a deposition in a civil suit despite a court order compelling discovery. The trial court's judgment was premised on its belief that Gahagan had partially waived his Fifth Amendment privilege by answering questions on the same subject at a previous coroner's inquest. We find the waiver does not extend so far and reverse the trial court.

In April 1972, Gregory Stone died from a single gunshot wound in the head he received in appellant Gahagan's apartment, while Gahagan was present, from a pistol owned by Gahagan. According to Gahagan, the shooting was an accident that resulted from Stone's mishandling of the gun. Nevertheless, Gahagan did not report Stone's death, but instead hid the body, threw away the gun and took other actions designed to conceal it. He did this, he said, because he feared that as a parolee he would be sus-

pected of and charged with homicide. When the police found Stone's body, Gahagan was arrested and held as a material witness. He was released 31 days later, after taking a polygraph examination and pleading guilty to the crime of concealing a dead body. Following his release, he appeared and testified at the coroner's inquest into the incident.

Plaintiff Robert W. Stone filed suit against the State for wrongful death as the administrator of the decedent's estate. The basis of the complaint was that Gahagan's parole officer had negligently failed to exercise proper control over him by allowing him to possess the gun that killed Gregory Stone. Gahagan was subpoenaed by plaintiff in this action to give a deposition regarding the details of the shooting. He appeared through counsel but refused to testify, claiming his privilege against self-incrimination. Plaintiff then obtained an order compelling discovery from the trial court which required Gahagan to testify on the following limited conditions: (1) that he have the right to have counsel present; (2) that he have available a copy of the transcript of his testimony at the coroner's inquest; (3) that all counsel restrict their questions to the scope of those Gahagan voluntarily answered at the inquest; and (4) that all counsel follow, insofar as practicable, the phraseology of those previous questions.

Another deposition was then scheduled and held, but at it Gahagan again claimed Fifth Amendment privilege against all questions other than those regarding his name and address. For that refusal to answer he was held in contempt by the trial court. At the show cause hearing the court held that Gahagan could not claim his privilege as to any question he had previously answered, stating:

[I]n my previous ruling I had made it clear that the reason I was granting the Order at that time was, in my opinion, that the privilege granted by the Fifth Amendment had been waived by the failure to exercise the Fifth Amendment at the time of the coroner's inquest and that's the specific reason I gave for allowing the

taking of the deposition and allowing plaintiff's counsel to examine Mr. Gahagan by deposition.

The sole question presented to us by this appeal, therefore, is whether, by testifying at the coroner's inquest, Gahagan waived his privilege against self-incrimination as to similar questions on the same matter put to him at the deposition.

■ The established rule is that a waiver of the privilege against self-incrimination by testifying at one proceeding does not extend to a later, separate proceeding. *United States v. Johnson*, 488 F.2d 1206 (1st Cir. 1973); *Ottomano v. United States*, 468 F.2d 269 (1st Cir. 1972); *cert. denied*, 409 U.S. 1128, 35 L. Ed. 2d 260, 93 S. Ct. 948 (1973); *United States v. Miranti*, 253 F.2d 135 (2d Cir. 1958); *In re Neff*, 206 F.2d 149 (3d Cir. 1953); *McConkey v. State*, 504 P.2d 823 (Alas. 1972); *In re Snyder*, 398 Pa. 237, 157 A.2d 207 (1960); *People v. Cassidy*, 213 N.Y. 388, 107 N.E. 713 (1915); *Overend v. Superior Court*, 131 Cal. 280, 284, 63 P. 372 (1900); *Cullen v. Commonwealth*, 65 Va. (24 Gratt.) 624, 627 (1873); 8 J. Wigmore, *Evidence* § 2276(4) (McNaughton rev. 1961). The reasons given by courts following this rule are various: that repetition adds to the weight of the evidence increasing the self-incrimination danger; that changed circumstances may have created new and greater dangers of prosecution of the witness; that a different proceeding may entail different procedures, increasing the possibility of incriminatory disclosures. *See* Houghton, *Requiring Witnesses to Repeat Themselves*, 47 Tex. L. Rev. 266, 267 (1969). But whatever the justification for this result, it is clear that the vast majority of courts both ancient and modern, state and federal, have reached it.

A few recent cases have created or suggested a limited exception to this rule where a witness gives testimony to a grand jury and later refuses to repeat it at a trial on charges brought by the body to which the testimony was given. *United States v. Seewald*, 450 F.2d 1159, 1163 (2d Cir. 1971); *Ellis v. United States*, 416 F.2d 791 (D.C. Cir. 1969); *In re DeSaulnier*, 360 Mass. 761, 276 N.E.2d 278 (1971). The courts in these cases reasoned that the witness should

have known that the trial would result from his disclosures to the investigatory body and that the prosecution would rely on their being able to present the same evidence at trial. The limited additional danger to the witness was found to be foreseeable to him and outweighed by the state's interest in planning and conducting criminal trials. The courts therefore held that

> Where a witness assisted and advised by counsel has testified in proceedings or investigations obviously directed to the subject matter of an inquiry or an issue later before a court, and where the prior testimony has been recorded by a competent stenographer or has been written out in the presence of the witness, the witness's privilege is to be deemed waived (a) at least to the extent of the subject matter of the questions which he has answered, (b) where the proceeding in which the privilege is invoked is a probable, logical, or natural continuation or outgrowth of the proceeding or inquiry in which prior testimony has been given by the witness.

*In re DeSaulnier, supra* at 281.

Respondent asks us to extend these cases to reach this one, even though they are in the minority and have been strongly criticized. *See United States v. Johnson, supra* at 1210-11; *Ellis v. United States, supra* at 808 (Wright, J., dissenting); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 140, at 298 (2d ed. 1972). But whatever their validity in the confines of the circumstances they involved, they can have no application here. The waiver here was found in a civil deposition, not a criminal case; there was no reliance by a misled prosecutor, no overriding state interest to balance against the witness' claimed rights. More importantly, the civil action here could in no sense be said to be a "probable, natural or logical outgrowth" of the coroner's inquest that Mr. Gahagan or his attorney there could or should have then foreseen. The two proceedings were completely separate and distinct.

Appellant Gahagan's situation under the order of the court below exemplifies the strongest reason for the general rule against extending a waiver to new and unrelated

proceedings, even where it would appear that no further self-incrimination could result from repeating prior testimony. At the coroner's inquest he faced questioning by persons concerned only with ascertaining the cause and circumstances of Gregory Stone's death.[1] At the deposition, however, he would be subject to direct and cross-examination by counsel for parties whose interests are at stake and possibly jeopardized by his evidence, who may attempt to confuse, contradict or discredit him in furtherance of their clients' cause.

> While in theory a witness may be subjected to no additional legal detriment, there is a reasonable possibility that in the process of rigorous examination and cross-examination he may make further damaging admissions because of confusion or excitement. As a practical matter, extending the waiver to trial testimony creates a danger of greater legal detriment.

E. Cleary, *McCormick's Handbook of the Law of Evidence* § 140, at 298 (2d ed. 1972). As the court said in *People v. Cassidy, supra* at 395:

> The admissions made by a person who gives testimony in court of a transaction without asserting his constitutional privilege cannot be recalled, but the waiver of the privilege does not by any fair reasoning extend to new and independent proceedings where the circumstances, surroundings and prospective criminal charges may be entirely different. A person who is entitled to the benefit of the constitutional provisions is so entitled in each new and independent proceeding, otherwise he would subject

---

[1] RCW 36.24.020 provides in part:

"Any coroner, in his discretion, may hold an inquest if he suspects that the death of a person was unnatural, or violent, or resulted from unlawful means, or from suspicious circumstances, or was of such a nature as to indicate the possibility of death by the hand of the deceased or through the instrumentality of some other person: . . .

"The coroner shall summon six good and lawful persons to serve as jurors and to hear all the evidence concerning the death and to inquire into and render a true verdict on the cause of death.

"The prosecuting attorney having jurisdiction shall be notified in advance of any such inquest to be held, and at his discretion may be present at and assist the coroner in the conduct of the same."

himself to a new cross-examination and be required under new and changed conditions to give testimony that may not have been anticipated or intended in subjecting himself to examination as a witness in a prior and different proceeding.

We therefore follow the unanimous rule in cases of this nature and hold that Gahagan's waiver of his privilege against self-incrimination, while voluntary and binding at the coroner's inquest, does not extend to other, unrelated legal proceedings. We recognize that this holding severely prejudices plaintiff's ability to prove his case: without Gahagan's testimony it may be impossible to establish even the most fundamental facts basic to this lawsuit. Many of these were discussed in Gahagan's earlier testimony, but it may be that that testimony is not properly admissible under any exception to the hearsay rule.[2] If it is not, plaintiff's loss will be unfortunate; but the courts cannot remedy damage done to one person's cause of action by the rules of evidence by abrogating another's constitutional rights. The inability to obtain and present probative evidence is always undesirable, but it is a cost that our most fundamental law has determined to be justified by the ben-

---

[2] Gahagan's assertion of his privilege makes him "unavailable" to testify within the meaning of the exceptions to the hearsay rule. *State v. Solomon*, 5 Wn. App. 412, 487 P.2d 643 (1971). But, although his inquest testimony was given under oath and subject to cross-examination, the cross-examiner there did not necessarily have the same interests as the State does in this civil suit and therefore the testimony may not be admissible under the "former testimony" exception. *See Duffy v. Blake*, 91 Wash. 140, 157 P. 480 (1916). Similarly, although Gahagan's testimony at the inquest apparently tended to potentially incriminate him, it is not clear that it would qualify as an admissible declaration against his penal interest. *See State v. Garrison*, 71 Wn.2d 312, 427 P.2d 1012 (1967); *State v. Wicker*, 10 Wn. App. 905, 520 P.2d 1404 (1974). It may be, however, that the guarantees of trustworthiness provided by Gahagan's situation at the inquest and the oath and opportunity for cross-examination that did exist there may be sufficient to render the transcript of his testimony admissible under a general exception to the hearsay rule such as that recognized by rule 803(24) of the new Federal Rules of Evidence, even if the requirements of the more specific, traditional exceptions are not found to have been met.

348

efits of the privilege against self-incrimination. *See* E. Cleary, *McCormick's Handbook of the Law of Evidence* § 118 (2d ed. 1972).

The decision of the trial court is reversed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.