Richmond

## NORTH AMERICAN MORTGAGE INVESTORS

v.

## LOUIS J. POMPONIO, JR., PETER POMPONIO, CAROLYN POMPONIO and MARY LOU POMPONIO

March 2, 1979.

Record No. 770955.

Present: All the Justices.

*Terrence Ney (K. Stewart Evans; Boothe, Prichard & Dudley,* on brief), for plaintiff in error.

No brief or argument for defendants in error.

HARMAN, J., delivered the opinion of the Court.

In these judgment creditor's proceedings in aid of execution we are called upon to review the trial court's ruling which permitted the individual defendants, who were judgment debtors, to refuse to produce subpoenaed documents and to refuse to answer interrogatories of the judgment creditor solely on the grounds of the privilege against self-incrimination.

On May 17, 1976, North American Mortgage Investors (North American) was awarded judgment by the Circuit Court of Fairfax County against Grover Cleveland Corporation, Louis J. Pomponio (Louis), Mary Lou Pomponio (Mary Lou), Peter Pomponio (Peter), Carolyn Pomponio (Carolyn), Paul Pomponio (Paul) and Judith Pomponio (Judith) for the sum of $975,603 and costs, plus attorney's fees and interest from November 21, 1972.

On July 21, 1976, at North American's direction, the Clerk of the trial court issued a debtor interrogatory summons and a subpoena duces tecum for each of the judgment debtors commanding an appearance on August 10 before a Commissioner in Chancery of

the court to answer debtor interrogatories and to produce documents for use in the proceedings. Process was served on all judgment debtors except Paul and Judith.

On August 10 the judgment debtors served with process appeared and, upon their motion, the proceedings before the Commissioner were adjourned to August 12. At hearing on that date, Grover Cleveland Corporation and the individual judgment debtors declined to produce any of the subpoenaed documents, basing their refusal on the privilege against self-incrimination. When examined on oral interrogatories, the four individuals, Louis, Mary Lou, Peter and Carolyn, admitted their identity and gave their respective addresses. Thereafter, each of them declined to answer any of the other questions propounded to them based on the privilege against self-incrimination. Louis, as President of Grover Cleveland Corporation, also invoking the privilege, refused to produce the subpoenaed corporate documents or to answer any questions regarding corporate assets.

The questions asked the individual judgment debtors dealt with: (1) their knowledge of any criminal proceedings or criminal investigations pending against them; (2) personal data such as marital status, children, places of residence, and social security number; (3) employment, business activities and participation in civil litigation; (4) personal assets and income; (5) location and identity of assets and records relating thereto; and (6) personal liabilities and obligations.

On September 24, 1976, North American filed a motion with the trial court to compel production of the subpoenaed documents and answers to the oral interrogatories by the corporate and individual defendants. In support of its motion, North American filed two affidavits of Frank W. Dunham, Jr., First Assistant United States Attorney for the Eastern District of Virginia.

The Dunham affidavits recited that he had been subpoenaed to testify in the proceedings and, pursuant to federal regulations, had been authorized by an appropriate official of the United States Department of Justice to respond to the court only in the form of a sworn affidavit. The affidavits then recited that Louis, Peter and Paul were defendants in three criminal cases originating in the United States District Court for the Eastern District of Virginia in 1974; that, to the best of Dunham's knowledge, these were the first criminal charges lodged against those defendants; that Louis and Peter were charged and tried for fraud, tax evasion and interstate transportation in aid of racketeering (ITAR); that Louis was

acquitted of tax evasion but convicted of fraud and ITAR; that Peter was acquitted of fraud and ITAR, but convicted of tax evasion; that Louis' convictions had been appealed and were awaiting appellate review; that Peter's conviction of tax evasion was reversed by the United States Court of Appeals for the Fourth Circuit which, in turn, was reversed by the United States Supreme Court; that Peter's tax evasion case was then pending, on remand, before the United States Court of Appeals for the Fourth Circuit; that no criminal charges had ever been investigated or filed against Carolyn or Mary Lou and no prosecution of them was contemplated; and, that, except for retrial of pending cases, should they be reversed on appeal, the United States Attorney had no plans to further prosecute Louis or Peter.

Attached to one of the affidavits, and incorporated therein by reference, was a partial transcript of the testimony of Louis and Peter at their criminal trials.

As a part of their response, the judgment debtors filed affidavits of Judith and Paul. Judith's affidavit disclosed no information about the other judgment debtors. Paul's affidavit stated that he was subpoenaed and appeared before a grand jury sitting in the United States District Court for the Eastern District of Virginia, on October 5, 1976, and that, after being informed that the grand jury was investigating possible violations of federal laws, Paul was advised by Joseph Fisher, Assistant United States Attorney, that both he and Louis were "target[s] of the investigation."

The report of the Commissioner in Chancery dated October 9, together with a transcript of the proceedings before the Commissioner, was filed with the trial court. In this report the Commissoner recited that all the judgment debtors, asserting their privilege against self-incrimination, had refused to respond to the subpoenas duces tecum and oral interrogatories except to give their names and addresses. The Commissioner believed the judgment debtors had not properly asserted privilege and were, therefore, in contempt.

A hearing on North American's motion was convened before the trial court on November 15, 1976. At this hearing Frank Dunham, whose affidavits had been filed with North American's motion, was called as a witness by the judgment debtors. Dunham's testimony, for the most part, reaffirmed what had been already stated in his affidavits.

Dunham further testified that he had discussed the contents of his first affidavit with Assistant United States Attorney Joseph

Fisher prior to signing it, and the affidavit would not have been drawn as it was if Fisher had indicated that Louis was a target of the grand jury investigation. Dunham testified that, while Paul was called as a witness before the grand jury, it was his understanding that Paul was "just that, a witness." He reiterated that none of the Pomponios were targets in any pending investigation and that the United States was "not currently" seeking evidence against them.

At the conclusion of Dunham's testimony, all parties rested and submitted the case to the court, which heard oral argument by counsel on two occasions.

Then, as now, North American contended that a corporation was not entitled to assert the Fifth Amendment privilege against self-incrimination, and that the court should not honor the blanket claim of immunity asserted by the indviduals.

The trial court denied the corporation's claim of privilege, a ruling not challenged on appeal, but upheld the blanket claims of privilege by the individuals, which ruling is the subject of this appeal. Finding that the trial court erred in upholding the claims of blanket immunity asserted by the individual defendants, we reverse.

■ There is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. *Capitol Products Corp.* v. *Hernon*, 457 F.2d 541 (8th Cir. 1972). The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination of the validity of the claim. *Heligman* v. *United States*, 407 F.2d 448, 450-51 (8th Cir.), *cert. denied*, 395 U.S. 977 (1969).

■ In *Hoffman* v. *United States*, 341 U.S. 479 (1951), the Supreme Court, in sustaining the claim of privilege, set forth the test for determining when a witness may invoke this privilege, saying:

> ". . . The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, *Rogers* v. *United States*, 340 U.S. 367 (1951) and to require him to answer if 'it clearly appears to the court that he is mistaken.' *Temple* v. *Commonwealth*, 75

Va. 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' See Taft, J., in *Ex parte Irvine,* 74 F. 954, 960 (C.C.S.D. Ohio, 1896)."

*Id.* at 486-87.

To satisfy the *Hoffman* test and sustain the privilege, it is necessary:

". . .(1) That the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime . . . and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case. It is in this latter connection, the credibility of the suggested connecting chain, that the reputation and known history of the witness may be significant."

*United States* v. *Coffey,* 198 F.2d 438, 440 (3d Cir. 1952).

Recently, in *Zicarelli* v. *New Jersey State Commission of Investigation,* 406 U.S. 472 (1972), the Supreme Court reaffirmed the *Hoffman* test, saying, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities." *Id.* at 478. Moreover, the privilege against self-incrimination

is a purely personal privilege of the witness and a refusal to answer cannot be justified by a desire to protect another. *Rogers* v. *United States*, 340 U.S. 367, 371 (1951).

For the reasons set forth above, the judgment of the trial court will be reversed and the case will be remanded for further proceedings in which the trial court will determine whether each defendant is justified in invoking the privilege against self-incrimination with respect to each of the questions propounded and each of the documents subpoenaed.

*Reversed and remanded.*