[No. 7381–8–I.   Division One.   March 2, 1981.]

RICHARD M. EASTHAM, *Respondent,* v. FERDNAND M.
ARNDT, ET AL, *Appellants.*

*Henry & Sorrels* and *James N. Fischer,* for appellants.

*Flynn, Adelstein & Sharpe* and *Philip Sharpe,* for respondent.

CALLOW, J.—The appellant, Ferdnand M. Arndt, appeals an order adjudging him guilty of contempt of court entered for his refusal, on Fifth Amendment grounds, to obey a trial court order to answer certain questions asked him in proceedings supplemental to a judgment. Three issues are presented: (1) whether the immunity granted in RCW 6.32-.200 is adequate to justify the compulsion of a person's testimony over his claim of Fifth Amendment privilege against self–incrimination; (2) whether the appellant has made a sufficient showing that his answers to questions might tend to incriminate him so as to enable the appellant to invoke the privilege against compulsory self–incrimination; and (3) whether the trial court's imposition of terms upon the appellant was permissible.

In December 1978, Richard Eastham commenced supplemental proceedings against the appellant pursuant to RCW 6.32 seeking to satisfy a judgment which Eastham recovered against the appellant in 1973. RCW 6.32.010 provided that "[a]t any time within six years after entry of a judgment for the sum of twenty–five dollars or over upon application by the judgment creditor, such court or judge may, by an order, require the judgment debtor to appear . . . to answer concerning the same". The answer of a party or witness examined in a supplemental proceeding must be under oath. RCW 6.32.050. Such a party or witness is granted the following protection:

A party or witness examined in a special proceeding authorized by this chapter is not excused from answering

a question on the ground that his examination will tend to convict him of a commission of a fraud, or to prove that he has been a party to or privy to or knowing of a conveyance, assignment, transfer or other disposition of property for any purpose; or that he or another person claims to be entitled as against the judgment creditor or receiver appointed or to be appointed in the special proceeding to hold property derived from or through the judgment debtor, or to be discharged from the payment of a debt which was due to the judgment debtor or to a person in his behalf. But an answer cannot be used as evidence against the person so answering in a criminal action or criminal proceeding.

RCW 6.32.200.

In the course of supplemental proceedings, the appellant refused to answer questions regarding his assets, claiming a Fifth Amendment privilege against self–incrimination. The court held an in camera hearing to permit the appellant to disclose "the reasons why he felt there was some risk in answering questions as to his property which could subject him to criminal prosecution." Following in camera testimony by the appellant, the court ruled that the appellant "failed to satisfy the [c]ourt that answers to questions concerning his assets and liabilities might tend to incriminate him." The court noted the existence of RCW 6.32.200 but made no ruling as to its effect. The appellant was directed to answer questions by the judgment creditor concerning his assets and liabilities. The appellant, asserting a privilege against self–incrimination, declined to answer the questions propounded, including questions regarding assets, liabilities, income or expenses.[1] He was found in contempt

---

[1]After stating his name and address, the appellant was asked the following questions:

1. By whom are you employed?
2. Do you work?
3. Do you presently have any loans from any banks?
4. Do you have any interest in any real property?
5. Do you hold a mortgage on any real property?
6. Do you have any liens on real property?

To each of these questions the appellant declined to answer after being directed to do so by the court. Finally, the appellant was asked whether there were any

and ordered "committed to the Whatcom County Jail until such time as he consents to answer questions propounded to him concerning his assets and liabilities when so directed by the court." The order was stayed pending this appeal.

The first issue is whether the grant of immunity in RCW 6.32.200 is adequate to justify the compulsion of the appellant's testimony over his claim of Fifth Amendment privilege against self–incrimination.

■ The Fifth Amendment declares that no person "shall be compelled in any criminal case to be a witness against himself". This privilege against self–incrimination includes the right of a witness not to give incriminatory answers in any proceeding—civil or criminal, administrative or judicial, investigatory or adjudicatory. *Kastigar v. United States,* 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972). The Fifth Amendment privilege against self–incrimination is applicable to the states through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964).

■ The adequacy of a state grant of immunity is to be tested against the scope of protection afforded by the privilege. If a state grant of immunity is coextensive with the scope of the Fifth Amendment privilege, that is, the grant of immunity has removed the dangers against which the privilege protects, incriminatory testimony may be compelled and a witness' refusal to answer based on the privilege is unjustified. If, however, a state grant of immunity is not as comprehensive as the protection afforded by the privilege, incriminatory testimony cannot be compelled and a witness may invoke the privilege and refuse to answer.

---

questions about any assets that he would answer. The appellant responded that he would "answer no questions about assets, liabilities, income, or expences [*sic*]; respectfully." It is undisputed that the appellant's refusals to answer were based on a claim of privilege against self–incrimination.

We recognize that the above questions call for a "yes" or "no" answer and that such an answer would not be incriminatory. However, a "yes" or "no" answer would not help the judgment creditor to satisfy his judgment, and further inquiry into the subject area would be necessary.

*Kastigar v. United States, supra; Murphy v. Waterfront Comm'n,* 378 U.S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594 (1964); *State v. Carroll,* 83 Wn.2d 109, 515 P.2d 1299 (1973); Annot., 32 L. Ed. 2d 869 (1973); 81 Am. Jur. 2d *Witnesses* §§ 58–61 (1976). The invocation of the privilege in these circumstances is dependent upon the witness showing to the satisfaction of the trial court that an answer would dangerously expose the witness to incrimination. As stated in *Hoffman v. United States,* 341 U.S. 479, 486–87, 95 L. Ed. 1118, 71 S. Ct. 814 (1951):

The privilege afforded not only extends to answers that would in themselves support a conviction under a . . . criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime. *(Patricia) Blau v. United States,* 340 U.S. 159 [95 L. Ed. 170, 71 S. Ct. 223] (1950). But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. *Mason v. United States,* 244 U.S. 362, 365 [61 L. Ed. 1198, 37 S. Ct. 621] (1917), and cases cited. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say–so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified, *Rogers v. United States,* 340 U.S. 367 [95 L. Ed. 344, 71 S. Ct. 438, 19 A.L.R.2d 378] (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." *Temple v. Commonwealth,* 75 Va. 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." See Taft, J., in *Ex*

*parte Irvine,* 74 F. 954, 960 (C. C. S. D. Ohio, 1896).

█ Two types of statutory immunity are adequate substitutes for a person's right to refuse to testify against oneself:

> Generally speaking, two forms of statutory grants of immunity have been upheld as constitutionally sufficient in scope to square with the scope of the Fifth Amendment privilege against self–incrimination. These forms have been characterized as furnishing "transactional immunity," *i.e.,* immunity from criminal prosecution for any transaction, matter or thing about which a witness is compelled to testify, and "use and derivative use immunity," *i.e.,* immunity from the use of the compelled testimony or any evidence derived therefrom in a subsequent criminal prosecution of the witness. *Brown v. Walker,* 161 U.S. 591, 40 L. Ed. 819, 16 S. Ct. 644 (1896); *Ullmann v. United States,* 350 U.S. 422, 100 L. Ed. 511, 76 S. Ct. 497, 53 A.L.R.2d 1008 (1956); *Kastigar v. United States,* [406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972)].

*State v. Carroll, supra* at 112. The statutory grant of "use immunity," *i.e.,* immunity from the *use* of the compelled testimony in any criminal prosecution, is not coextensive necessarily with the privilege and permits a witness to invoke the Fifth Amendment privilege notwithstanding the immunity statute on a proper showing. *Albertson v. Subversive Activities Control Bd.,* 382 U.S. 70, 15 L. Ed. 2d 165, 86 S. Ct. 194 (1965); *Counselman v. Hitchcock,* 142 U.S. 547, 35 L. Ed. 1110, 12 S. Ct. 195 (1892); Annot., 32 L. Ed. 2d 869 (1973). The statutory grant of "use immunity" is not as comprehensive as the protection afforded by the Fifth Amendment privilege since it does not preclude the derivative use of the fruits of the compelled testimony as investigatory leads which might supply other means of incriminating the witness.

In *Counselman v. Hitchcock, supra,* a statutory grant of immunity provided that "no evidence obtained from a witness by means of a judicial proceeding shall be given in evidence, or in any manner used against him . . . in any court of the United States, in any criminal proceeding . . ."

It was held that such a grant of immunity was not coextensive with the Fifth Amendment privilege and that while the statute protected the witness against the use of his testimony against him in court, it would not "prevent the use of his testimony to search out other testimony to be used in evidence against him". *Counselman v. Hitchcock, supra* at 564. The decision further observed that the statute was ineffectual in that it did not afford "protection against that use of compelled testimony which consists in gaining therefrom a knowledge of the details of a crime, and of sources of information which may supply other means of convicting the witness . . ." *Counselman v. Hitchcock, supra* at 586.

Here, RCW 6.32.200 provides in part that in special proceedings authorized by RCW 6.32, "an answer cannot be *used as evidence* against the person so answering in a criminal action or criminal proceeding." (Italics ours.) This is a narrow "use" immunity and affords no greater immunity than that given by the statute in *Counselman* and therefore suffers the same deficiency noted therein. *See also State ex rel. North v. Kirtley,* 327 S.W.2d 166 (Mo. 1959). Since RCW 6.32.200 is not as comprehensive as the protection afforded by the Fifth Amendment privilege against self–incrimination, a witness may assert a Fifth Amendment claim notwithstanding the statutory grant of immunity. *Albertson v. Subversive Activities Control Bd., supra; Arndstein v. McCarthy,* 254 U.S. 71, 65 L. Ed. 138, 41 S. Ct. 26 (1920); *Counselman v. Hitchcock, supra.*

The second issue is whether the appellant has made a sufficient showing that his answer to questions might tend to incriminate him so as to enable the appellant to invoke the privilege against self–incrimination. *Hoffman v. United States, supra. See generally* Annot., 95 L. Ed. 1126 (1951); 81 Am. Jur. 2d *Witnesses* §§ 38, 39, 52 (1976). Standards similar to those stated in *Hoffman* have been enunciated in *State v. Parker,* 79 Wn.2d 326, 485 P.2d 60 (1971); *State v. James,* 36 Wn.2d 882, 221 P.2d 482 (1950).

A person claiming the privilege "may not be compelled to do more than show that the answer is likely to be

dangerous to him, else he will be forced to disclose those very facts which the privilege protects." *United States v. Weisman*, 111 F.2d 260, 262 (2d Cir. 1940). The court, however, and not the witness, is the final judge of whether the chance of self–incrimination is genuine or contrived. As observed in *State v. Parker, supra* at 332:

> But the asserted hazard of self–incrimination must appear to be genuine; if fanciful or illusory, the claim of immunity should be rejected as insufficient to overcome the correlative duty to the court and litigants to testify to the truth. This means that the power to decide whether the hazards of self–incrimination are genuine and not merely illusory, speculative, contrived or false, must rest with the trial court before whom the witness is called to give evidence. The power to decide whether the witness shall be immune from answering certain questions put to him on the ground that the answers will incriminate him is thus vested in the trial court to be exercised in its sound discretion under all of the circumstances then present.

Where the incriminatory nature of an answer is not evident from the implication of the question in the setting in which it is asked, the witness is placed in a paradox "for he must prove the criminatory character of what it is his privilege to suppress just because it is criminatory", and that "[t]he only practicable solution is to be content with the door's being set a little ajar, and while at times this no doubt partially destroys the privilege, and at times it permits the suppression of competent evidence, nothing better is available." *United States v. Weisman, supra* at 262; Annot., 95 L. Ed. 1126, 1132 (1951). In determining the extent in which the door must be set ajar, we find the following:

> The facts of each particular case are controlling and few general rules can be drawn regarding the degree to which a showing of specific danger is required. A witness need not conclusively demonstrate that his answers will subject him to prosecution, but it is fair to state that in order to effectively invoke the privilege, a witness must establish a factual predicate from which the court can, by

use of "reasonable judicial imagination" (aided by suggestions of counsel), conceive of a sound basis for the claim.

*Thoresen v. Superior Court,* 11 Ariz. App. 62, 66, 461 P.2d 706 (1969). *See also Cantor v. Saitz,* 562 S.W.2d 774 (Mo. App. 1978), which indicated that a witness or his counsel must describe, in general terms, a rational basis upon which his answer could incriminate him.

There is no blanket Fifth Amendment right to refuse to answer questions based on an assertion that any and all questions might tend to be incriminatory. The privilege must be claimed as to each question and the matter submitted to the court for its determination as to the validity of each claim. *North Am. Mortgage Investors v. Pomponio,* 219 Va. 914, 252 S.E.2d 345 (1979) (supplemental proceedings); *Tennesco, Inc. v. Berger,* 144 Ga. App. 45, 240 S.E.2d 586 (1977) (supplemental proceedings).

We proceed to those cases where a judgment debtor has asserted a Fifth Amendment privilege against self–incrimination in a supplemental examination proceeding or analogous situation. In *Capitol Prods. Corp. v. Hernon,* 457 F.2d 541 (8th Cir. 1972), a judgment debtor refused to answer questions put to him in supplemental proceedings regarding his assets, asserting on appeal that such a disclosure might lead to the discovery of evidence of violation of tax laws or laws relating to the acquisition and retention of property. The court found nothing in the record to suggest that the judgment debtor was confronted with a substantial and real hazard of incrimination, noting that "[t]here was nothing to link the [judgment debtor] with any criminal investigation or proceeding" and that he "offered no evidence to show that this apprehension [of tax law violations] is anything other than imaginary." *Capitol Prods. Corp. v. Hernon, supra* at 543. In *Coleman v. Galvin,* 78 Cal. App. 2d 313, 177 P.2d 606 (1947), inquiries regarding the identity of the judgment debtor's assets were considered "prelimi-

nary questions" so that a refusal to answer based on a privilege against self–incrimination was improper. The court noted that it was not clear why the judgment debtor wished to assert the privilege. In *Thoresen v. Superior Court, supra,* a defendant in a civil action asserted a privilege against self–incrimination in refusing to answer interrogatories inquiring into his assets, date of acquisition of certain property, and income. The court found no realistic basis in the showing made by the defendant to justify invocation of the privilege. The court noted that there was nothing in evidence to indicate that a controversy over taxes between the defendant and federal and state government arose out of anything but innocent circumstances and that nowhere was it intimated that the defendant's past criminal prosecutions had anything to do with any offense in which the extent of his assets might be pertinent. *Thoresen v. Superior Court, supra* at 67.

Thus, the judgment debtor must demonstrate a reasonable factual predicate that his answer could incriminate him in order to sustain his claim of privilege. *See F.D.I.C. v. Sovereign State Capital, Inc.,* 557 F.2d 683 (9th Cir. 1977); *State ex rel. Howard v. Allison,* 431 S.W.2d 233 (Mo. App. 1968); *Kirtley v. Abrams,* 184 F. Supp. 65 (E.D.N.Y. 1960). As noted in *Holland Farms, Inc. v. Pruzansky Bros., Inc.,* 74 App. Div. 2d 598, 598, 424 N.Y.S.2d 516, 516 (1980):

> The individual defendants failed to show that the questions asked were such as might be "dangerous" because a disclosure would be inimical to their Fifth Amendment rights (see *Hoffman v United States,* 341 US 479 [95 L. Ed. 1118, 71 S. Ct. 814]). There was no effort to provide any evidence of an ongoing criminal investigation of these individual defendants . . .

In response to the appellant's initial refusal to answer questions regarding his assets, the court held an in camera hearing to determine whether the appellant's fear of incrimination in answering questions regarding his assets

was well founded.[2] That the appellant was concerned as to the use to which his testimony therein would be put is evident from the initial colloquy between the appellant, appellant's counsel, and the court. The appellant asked if he were to divulge something of an incriminating nature at the in camera hearing, whether the record therein could be secured by federal authorities. He received no definitive answer. The appellant then testified in part as follows:[3]

THE COURT: . . . The purpose of this hearing is for you to demonstrate that there is some reason for you to believe that answering questions as to your assets will subject you to a criminal prosecution.

MR. ARNDT: That's correct, your Honor. I appeared before a federal grand jury and respectfully declined to answer questions regarding my assets, my liabilities, my income and my expenses and I, without getting into intimate detail, I am having great difficulty trying to figure out how to explain it to you.

. . .

THE COURT: Tell me whatever it is you want me to know that would suggest to me you have reason to fear that disclosing the nature and whereabouts of your assets would incriminate you in a crime.

MR. ARNDT: The primary investigation's done for the purpose of the grand jury. The federal grand jury hearings were by the intelligence unit of the United States Treasury Department. Is it necessary to go into—

. . .

MR. ARNDT: . . . My primary problem is that prior to the federal grand jury hearing there was a [named federal agency] violation and the transactions that stem from that create a whole series of other problems and this is

---

[2]The use of an in camera proceeding is appropriate, as is a sealed record. However, an in camera hearing is not required if the external circumstances support the privilege claim:

A proper use for an in camera hearing is to allow a witness to impart sufficient facts in confidence to the judge to verify the privilege claim where external circumstances do not afford adequate verification.

*In re Brogna*, 589 F.2d 24, 28 n.5 (1st Cir. 1978).

[3]No confidences are revealed by reproducing, in relevant part, the in camera hearing.

primarily my basis for not testifying regarding assets, et cetera.

[Appellant's counsel]: If you'd clarify to the judge what connection the [agency] investigation would have with personal assets?

MR. ARNDT: The buying, selling, trading of stock resulted in some income that has gone to the purchase of a series of assets.

THE COURT: That's all you want to say?

MR. ARNDT: I think so, your Honor.

. . .

MR. ARNDT: . . . [I]t is a criminal violation of [agency] regulations that we are discussing, your Honor.

. . .

THE COURT: It isn't at all clear to me that these answers would be incriminating or even remotely connected with the discovery of evidence which would be incriminating.

MR. ARNDT: I think, your Honor, that the value and the amount of the assets, you know, broad scope coverage would put me in severe jeopardy as far as opening up the door and explaining how the assets were obtained as they relate to the [named federal agency] prohibitions.

Viewing the totality of the showing made, we do not believe that the appellant has demonstrated a sufficient nexus between possible criminal prosecution and the questions propounded to him at the supplemental proceeding to sustain the privilege claim.[4] We cannot say that the evaluation of the trial court was incorrect that the judgment debtor had not established that answering the questions created a real danger of incrimination. The incriminatory nature of an answer to the questions propounded is not evident from the implications of the questions in the set-

---

[4]RCW 6.32.200 was adopted by the legislature in 1893. A legislative review of the subject of supplemental proceedings is overdue. We note the suggestion made in *McCarthy v. Arndtstein*, 266 U.S. 34, 42, 69 L. Ed. 158, 45 S. Ct. 16 (1924), that if the legislature

should hereafter conclude that a full disclosure [by judgment debtors] is of greater importance than the possibility of punishing them for some crime in the past, it can . . . confer the power of unrestricted examination by providing immunity coextensive with the Fifth Amendment privilege. *See also Murphy v. Waterfront Comm'n*, 378 U.S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594 (1964).

ting in which they were asked.

The appellant did not provide a factual basis which would allow the court to grant the claim of privilege. It was properly rejected. The contempt decree is affirmed.

The third issue presented is whether it was error for the trial court to assess terms upon the appellant. The appellant contends that imposition of terms was error because it resulted in a punishment for his assertion of a constitutional right. We disagree.

The record reveals that terms were levied upon the appellant not because he claimed a privilege against self-incrimination, but because he failed to timely obtain legal counsel to represent him at the supplemental proceedings, which required that the matter twice be continued. The local court rules allow the court to "impose such terms as would be equitable" where a continuance is granted. We do not find any abuse of discretion by the trial court. *See Peterson v. David,* 69 Wn.2d 566, 419 P.2d 138 (1966).

The contempt order is affirmed as is the assessment of terms.

DURHAM, J., concurs.

WILLIAMS, J. (concurring)—Ferdnand M. Arndt did not demonstrate to the trial judge at the in camera hearing any basis for claiming a blanket Fifth Amendment privilege as to every question concerning his assets. His position is summed up in the last sentence of the portion of his testimony quoted in the majority opinion, at page 535:

> MR. ARNDT: I think, your Honor, that the value and the amount of the assets, you know, broad scope coverage would put me in severe jeopardy as far as opening up the door and explaining how the assets were obtained as they relate to the [named federal agency] prohibitions.

The trial court did not have the slightest interest in how Arndt obtained his assets. Its only concern was to identify and locate them so that they could be seized, sold and the proceeds applied to the judgment debt.

In order to satisfy the court that there is a need to invoke the Fifth Amendment, the witness must demonstrate that there is a real danger that incriminating information will be revealed.

> [T]he asserted hazard of self–incrimination must appear to be genuine; if fanciful or illusory, the claim of immunity should be rejected as insufficient to overcome the correlative duty to the court and litigants to testify to the truth. This means that the power to decide whether the hazards of self–incrimination are genuine and not merely illusory, speculative, contrived or false, must rest with the trial court before whom the witness is called to give evidence. The power to decide whether the witness shall be immune from answering certain questions put to him on the ground that the answers will incriminate him is thus vested in the trial court to be exercised in its sound discretion under all of the circumstances then present.

*State v. Parker,* 79 Wn.2d 326, 332, 485 P.2d 60 (1971). Arndt pointed to no real danger. *See, e.g., Zicarelli v. New Jersey Investigation Comm'n,* 406 U.S. 472, 480, 32 L. Ed. 2d 234, 92 S. Ct. 1670 (1972). His cryptic assertion that there are "a whole series of other problems" stemming from a federal grand jury and federal agency investigation, does not in any way establish why he will incriminate himself under federal law if he tells about his assets.

In determining whether there has been an adequate basis established to assert the privilege of the Fifth Amendment, the trial court must consider the setting in which the information is asked for. *See Hoffman v. United States,* 341 U.S. 479, 486, 95 L. Ed. 1118, 71 S. Ct. 814 (1951). The setting in this case is a court of general jurisdiction attempting to uncover a judgment debtor's assets. Arndt did not establish a basis for claiming the protection of the Fifth Amendment merely by making a nebulous reference to a federal grand jury and agency investigation. The trial court did not abuse its discretion in concluding Anrdt would not be placed in any genuine hazard of self–incrimination on the basis of his vague statements at the in camera hearing.

Arndt claims that by answering questions at the in cam-

era hearing regarding the federal agency and grand jury investigation he would waive his Fifth Amendment privilege. A waiver of the Fifth Amendment is not lightly implied. *Smith v. United States,* 337 U.S. 137, 93 L. Ed. 1264, 69 S. Ct. 1000 (1949). The whole purpose of the in camera hearing was to determine whether Arndt had a sufficient basis to invoke the Fifth Amendment. Arndt's disclosures to the trial court in such circumstances would not constitute a waiver of the Fifth Amendment for any subsequent federal criminal proceeding. *United States v. Larry,* 536 F.2d 1149 (6th Cir. 1976); *Stone v. State,* 85 Wn.2d 342, 344, 534 P.2d 1022 (1975).

Arndt also claims that he would incriminate himself if he testified as to the identity and location of *any* of his assets. It strains credulity to believe that every asset Arndt owns would somehow incriminate him under federal law. *See Zicarelli v. New Jersey Investigation Comm'n, supra* at 481. As the record now stands, it is impossible to determine whether Arndt would have been placed in danger of testifying as to the location and identity of assets which would "furnish a link in a chain of evidence sufficient to connect . . ." him with a crime. *Malloy v. Hogan,* 378 U.S. 1, 13, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964).

The Fifth Amendment was designed to protect citizens from being forced to disclose evidence which would make them criminally liable, not to allow judgment debtors to hide assets. The trial court's order of contempt should be upheld.

Reconsideration denied May 7, 1981.

Review denied by Supreme Court July 17, 1981.