## CIRCUIT COURT OF THE CITY OF RICHMOND

In re Stephen L. Bryant

### May 1, 1992

### Case No. LT 3758–2

BY JUDGE ROBERT L. HARRIS, SR.

Before the court is Stephen L. Bryant's (Respondent) Motion to Quash a subpoena duces tecum issued by the Virginia State Bar's Third District Committee, Section One. The subpoena seeks to compel production of certain documents belonging either to Respondent personally or belonging to Bryant & Porter, Ltd., Respondent's law firm. The documents sought relate to Stephen L. Bryant's or his firm's representation of six clients. Respondent argues that compelling production of such documents would violate his Fifth Amendment right against self-incrimination, as well as a similar right under Article I, § 8, of the Virginia Constitution.[1] It is also argued that such production would force Respondent to violate the attorney-client privilege with respect to each client for whom records are sought. Finally, Respondent argues that the investigatory process utilized by the Virginia State Bar violates his due process rights.

### *Due Process Claim*

Respondent's Due Process claim seems to be linked to his asser-

---

[1] No specific Virginia Constitutional citation is offered in Respondent's motion and supporting memorandum, but it is a reasonable inference that Article I, § 8, is the relevant provision.

tion in Paragraph Two of the Motion to Quash that the subpoena is an "overbroad fishing expedition." Under the Rules of the Virginia Supreme Court governing initial investigations of attorney behavior, District Committees of the Bar are empowered to "compel . . . the production of documents necessary or material to any inquiry." Rules Pt. 6, § IV, para. 13(B)(4)(c)(iii) (1991 Repl. Vol.). The essence of the claim is that this subpoena power represents a form of "discovery" for which no counterpart is available to the Respondent, since Pt. 6, § IV, para. 13(K)(4) of the Rules announces that no pre-hearing discovery procedures are available. This, of course, is not a matter squarely before this court, but it is noted that the Virginia Supreme Court has specifically found that an absence of discovery rights in a Bar disciplinary proceeding does not violate any procedural due process rights belonging to an attorney. *Gunter v. Virginia State Bar*, 241 Va. 186, 190, 399 S.E.2d 820, 823 (1991). In *Gunter*, an attorney had argued that his lack of discovery rights in bar disciplinary proceedings violated his due process right, but here Respondent takes a looking-glass view of Gunter's argument by asserting that it is not merely the absence of discovery rights which creates the due process violation, but that absence in the *presence* of powers which allow the State Bar to engage in a form of "discovery." The problem with this argument is that the Virginia Supreme Court has also stated that "'A proceeding to discipline an attorney . . . is a special proceeding, civil and disciplinary in nature, and of a summary character . . . . Being an informal proceeding, *it is only necessary that the attorney be informed of the nature of the charge preferred against him and be given an opportunity to answer.'"Id. (Quoting Seventh District Committee v. Gunter, 212 Va. 278, 284, 183 S.E.2d 713, 717 (1971)) (emphasis added). Accordingly, this court finds that no due process violation arises from either the empowering of the District Committee to compel the production of documents or from the issuing of a subpoena duces tecum pursuant to that power.

## Right Against Compelled Self-Incrimination

The Respondent bases this claim upon both United States and the Virginia Constitution. *See* U.S. Const., amend. V; Va. Const., art. I, § 8. The reach of the Commonwealth's protection against compelled self-incrimination essentially matches that of the Federal Constitu-

tion. *See, Walton v. City of Roanoke,* 204 Va. 678, 682, 133 S.E.2d 315, 318 (1963). The right against compelled self-incrimination has been found to reach even noncriminal proceedings when the information sought might have criminal repercussions. *See, Owens v. Commonwealth,* 186 Va. 689, 700, 43 S.E.2d 895, 899–900 (1947) ("The privilege protects a person from any disclosure *sought by legal process against him as a witness.*") (Emphasis in original).

The United States Supreme Court has found that the right against compelled self-incrimination is a personal right and cannot be claimed for another. *Fisher v. United States,* 425 U.S. 391, 396–97 (1976). Consistent with that view, it has also been found that an "individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if those records might incriminate him personally." *Bellis v. United States,* 417 U.S. 85, 88 (1974). In *Bellis,* the court discusses at length the personal nature of the privilege in finding that "the papers and effects which the privilege protects must be the *private property* of the person claiming the privilege, or at least in his possession in a *purely personal capacity.*" *Id.* at 90 (quoting *United States v. White,* 322 U.S. 694, 699 (1944)) (Emphasis added). Additionally, records do not become eligible for the privilege as "private property" simply because the legal entity which once held them has been dissolved. *See, Id.* at 88 (citing *Wheeler v. United States,* 226 U.S. 478 (1913)). Therefore, no Fifth Amendment protection is afforded to those records sought by the Bar's subpoena which either are or were records of the law firm of Bryant & Porter, Ltd.

The subpoena also seeks any relevant documents which are personal records of Stephen Bryant. *Bellis* also recites the long-held conclusion that Fifth Amendment protection extends to "compelled production of . . . personal papers and effects as well as compelled oral testimony." *Id.* at 87. *Accord, Rees v. Commonwealth,* 203 Va. 850, 866–67, 127 S.E.2d 406, 417–18 (1962), *cert. denied,* 372 U.S. 964 (1963) (holding that even personal papers of a defendant discovered during a permissive search of his parents' home were protected by the privilege). Therefore, the protection may extend to any personal material of Respondent which is encompassed by the subpoena duces tecum. However, the United States Supreme Court has limited the scope of Fifth Amendment protection with respect to certain obligatory records.

> [T]he physical custody of incriminating documents does not of itself protect the custodian against their compulsory protection. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed a duty which overrides his claim of privilege . . . .
>
> The principle applies not only to public documents in public offices, but also to *records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established.*

*Shapiro v. United States*, 335 U.S. 1, 17 (1947) (quoting *Wilson v. United States*, 221 U.S. 361, 380 (1911)) (Emphasis added). Accordingly, to the extent that the records sought by the Bar are those fiduciary records required by the Rules of the Virginia Supreme Court, Pt. 6, § II, DR 9–103, they are not protected by the Fifth Amendment right against compelled self-incrimination.

Nonetheless, other documents and records not contemplated by DR 9–103 may still be protected by a Fifth Amendment claim. However, "there is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination of the validity of the claim." *North American Mortgage Investors v. Pomponio*, 219 Va. 914, 918, 252 S.E.2d 345, 348–49 (1979); *cf., Tucker v. Virginia State Bar*, 233 Va. 526, 532, 357 S.E.2d 525, 528 (1987) ("None of the three complaints . . . alleged any wrongdoing which would constitute a crime. Therefore, the state and federal constitutional provisions granting protection against self-incrimination . . . were inapplicable ."). Accordingly, any remaining documents or records sought by the Bar's subpoena which might be subject to Respondent's Fifth Amendment right against compelled self-incrimination must be submitted to the court for review of the validity of any such claim. The Fifth Amendment will offer no sanctuary to records which do not reflect criminal activity.

## Attorney-Client Privilege

The attorney-client privilege has a lengthy history, deriving from a belief that confidentiality is necessary in communications between attorneys and clients so that the former can receive candid and complete information in order to provide the latter with accurate and complete legal advice and assistance. *See Fisher*, 425 U.S. at 403. Counsel for the Virginia State Bar argues that only a *client* can assert the attorney-client privilege, and while it is true that the modern view is that the privilege belongs solely to the client, *see, Lataif v. Restaurant Equities, Inc.*, 7 Va. Cir. 514, 514 (1978); 8 Wigmore, Evidence § 2290, at 544 (McNaughton rev. 1961), it is equally accepted that an attorney can assert the privilege on behalf of a client. *See Fisher*, 425 U.S. at 402, n 8.

Although Respondent may assert the privilege on behalf of his clients, the assertion itself is not sufficient to block disclosure of the requested documents. "[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Id.* at 403. However, the burden is placed upon the person asserting the privilege, here the Respondent on behalf of his clients, to demonstrate that the privilege is validly asserted. *See, Priest v. Hennessy*, 51 N.Y.2d 62, 409 N.E.2d 983, 986 (1980); *Ex parte Griffith*, 178 So. 2d 169, 176 (Ala. 1965) ("Whether a communication by a client to his attorney is privileged is a question of fact to be determined by the court. A witness, be he attorney or client, is not entitled to decide the question for himself."). Accordingly, any requested material which Respondent believes to be protected by the attorney-client privilege must be presented to this court for *in camera* review. *See, In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982) ("The proper procedure for asserting the attorney-client privilege as to particular documents, or portions thereof, would have been for appellants to submit them *in camera* for the court's inspection, providing an explanation of how the information fits within the privilege.").

In evaluating the applicability of the attorney-client privilege to requested records, Respondent should bear in mind at least the following principles which will be utilized by the court in its *in camera* review. Pre-existing documents which pass from a client to an attor-

ney are not protected by the privilege if they would not have been protected by some privilege while in the hands of the client. *See, Fisher*, 425 U.S. at 404. For example, any documents sought by the Bar which were at one time personal documents of a client of Respondent's which might tend to demonstrate client criminal activity may be protected by the privilege from disclosure. Again, however, the burden remains on the Respondent to support such a claim.

Records and documents that the law requires an attorney to keep for regulatory purposes should be no more protected by the attorney-client privilege than they were by the constitutionally-based privilege against self-incrimination. *See, Shapiro*, 335 U.S. at 17; *see also, Lesh v. United States*, 715 F. Supp. 1333, 1335 (E.D. Va. 1989) ("[T]here is no attorney-client privilege in bank records maintained by an attorney for his clients."). The court in *Lesh* discusses the applicability of the attorney-client privilege to bank records kept pursuant to the Bank Secrecy Act. Banks are required to keep certain records "because of the potential usefulness of such records 'in criminal, tax, and regulatory investigations and proceedings'." *Id.* at 1335 (quoting 12 U.S.C. § 1829b(a)(2)). "The fact that bank records derive from transactions involving an attorney's client trust account does not cloak those records with any special protection. To hold otherwise would give individuals the opportunity to use the attorney-client privilege for the impermissible purpose of masking fraud." *Id.* To the extent that the records sought by the Bar are those fiduciary records required by the Rules of the Virginia Supreme Court, Pt. 6, § II, DR 9–103, they are not protected by any attorney-client privilege and should be turned over to the District Committee pursuant to the subpoena duces tecum.

Even if the matter for which disclosure is sought might normally be protected by the attorney-client privilege, public policy may outweigh confidentiality concerns. *See, Priest*, 409 N.E.2d at 986. This court can think of few policy issues more compelling than the need for the Virginia Bar Association to have access to the materials necessary to carry out its assigned duty of overseeing attorney adherence to fiduciary and ethical obligations. In *State v. Stroger*, 184 N.J. Super. 124, 447 A.2d 598, aff'd 97 N.J. 391, 478 A.2d 1175 (1984), *cert. denied* 469 U.S. 1193 (1985), an attorney turned over certain accounting records to a Bar Association Review Board. When that Board subsequently turned over potentially incriminating records to

local prosecutors, the attorney challenged this action by arguing, *inter alia*, that the confidentiality requested of disciplinary proceedings was so aimed at protecting attorney interests that no such revelation was allowed. The New Jersey court disagreed, finding that:

> the intent of the rule was not to provide protection to an attorney whose conduct may amount to criminal wrongdoing. First, and foremost, is that the conduct of attorneys must be circumspect in all ways and that no court rule was, is or ever shall be designed to provide confidentiality to acts discovered through disciplinary investigations when those acts amount to potential criminal conduct. *Stroger*, 447 A.2d at 602. *Accord In re Kennedy*, 442 A.2d 79, 91 (Del. 1981) ("It is clear that the privilege was not intended to be used as a shield by an attorney to prevent scrutiny by the court of his records to determine whether or not he is meeting his fiduciary and ethical obligations to his client.")

Therefore, the Motion to Quash the Subpoena Duces Tecum is denied. Records and documents sought by the Virginia State Bar's Third District committee which belong to Bryant & Porter, Ltd., are not protected by any privilege against compelled self-incrimination and, unless shielded by the attorney-client privilege, should be turned over to the Committee. The attorney-client privilege extends neither to records which the Rules of the Supreme Court or other statutory authority require attorneys to keep, nor to pre-existing records which would not be privileged if still held by a client. Records and documents for which an attorney-client privilege is claimed must be turned over to the court for an *in camera* review, along with supporting arguments for the applicability of the privilege to such documents and records.

Personal records that the Respondent is required to maintain pursuant to the Rules of the Virginia Supreme Court or other statutory mandate are also not protected by the privilege against compelled self-incrimination and must be turned over to the District Committee, unless shielded by the attorney-client privilege. As with the records of Bryant & Porter, Ltd., the availability of the attorney-client privilege is limited; those records for which a claim is asserted must be turned over to the counsel for *in camera* review.